(Decided June 28th, 1866.)

---

JOHN A. APPLEGARTH ET AL. *vs.* GEORGE W. RUSSELL.

PURCHASER AT TRUSTEE'S SALE: WRIT OF POSSESSION: LIS PENDENS.— The practice is settled in this State, that when a purchaser at a sale under a decree has fully complied with the terms of sale, and possession of the premises purchased is withheld by a party to the suit, or by a person claiming under a party, by title subsequent to the commencement of the suit, the purchaser may obtain an order under which possession will be delivered to him by proper process.

The doctrine of *lis pendens* has no application except where there is a proceeding directly relating to the thing or property in question, or where the ulterior interest and object of the proceeding is to subject the property in question to the disposal of a decree of the Court.

APPEAL from the Circuit Court of Baltimore city:

This case grows out of a petition filed by the appellee in the case of *Jackson, et al. vs. Hodges, et al.*, reported in 24 *Md. Rep.*, 468. In that case, Hodges and others, on the 28th of September, 1860, filed their bill in the Circuit Court of Baltimore city, alleging that George Jackson was indebted to them, and that he had fraudulently conveyed, through the instrumentality of other parties therein named, certain lots of ground, with the improvements thereon, to Elizabeth, his wife; and praying that the deeds, whereby the said lots, &c., had been conveyed, might be declared void, and that the said property might be sold, and the proceeds applied to the payment of the debts of the said Jackson. The proceedings under the said bill resulted in the passage of a decree by said Court declaring the said deeds void, and appointing a trustee to sell the said lots; which decree on appeal to this Court was affirmed in 24 *Md. Rep.*, 468. At the trustee's sale, George W. Russell, the appellee became the purchaser of one of the said lots, and having complied with the terms of sale, the sale was reported and finally ratified and confirmed. Failing to obtain possession of the property purchased, the appellee on the 20th of May, 1863, filed a petition in said case of *Hodges, et al. vs. Jackson, et al.*, setting forth the sale and purchase and ratification of the sale as above stated, and describing the property sold as certain leasehold property, "which is described in a deed dated the 30th day of June, 1852, and recorded among the land records of Baltimore city, in liber E. D., No. 26, folio 48, made by James Mullen to the defendant, George Jackson."

The petition then alleges that the petitioner afterwards demanded possession of the property so purchased by him, and that John A. Applegarth refused to deliver to him possession of the said property, but claimed to hold it by virtue of a deed dated October the 23d, 1860, from George

Jackson and wife; that the bill in the case of *Hodges et. al. vs. Jackson et. al.*, was filed on the 28th day of September, 1860, and *subpoena* served on Jackson and wife on the same day, twenty-five days before the date of the deed; and that Jackson and wife filed their answer to the bill of complaint fourteen days before the execution of the deed. The petition concludes with a prayer that an order may be passed requiring the said John A. Applegarth, and James Bailey Orem, his tenant, to deliver to the petitioner possession of the property so as aforesaid purchased by him.

The appellant, Applegarth, in his answer to the petition disclaims all knowledge of the report of sale or its ratification, and submits to the Court the report of the trustee and order of ratification as filed in the cause for its true construction and legal effect; he admits that application was made to him by the petitioner to deliver to him possession of the property claimed by him, and his refusal to deliver the same, and alleges that he holds title to the property in question by virtue of a deed of Jackson and wife, dated October the 23rd, 1860; that the property at that date was owned by the said wife, and was purchased from her without knowledge on his part that any suit had been brought in relation thereto, although a few days before the purchase he had made every search in reference to the title, and that the purchase was *bona fide*, and for a valuable consideration; that the respondent attended the trustee's sale and gave notice of his claim to all intending to purchase, and that the trustee answered that no one would be required to comply with the terms of sale unless the title was good; and, "that the said property is included in the description of the first lot described in said advertisement, but is not identical therewith."

The case having been set down for hearing on the petition, answer and exhibits, the Court below, (KREBS, J.,) on the 23rd of November, 1863, filed the following opinion:

The practice is settled in this State, that when a purchas-

er at a sale under a decree has fully complied with the terms of sale, and possession of the premises purchased is withheld by a party to the suit, or by a person claiming under a party by title subsequent to the commencement of the suit, the purchaser may obtain an order under which possession will be delivered to him by proper process. *Tongue vs. Morton*, 6 *H. & J.*, 21. *Oliver vs. Caton*. 2 *Md. Chan. Dec.*, 301. *Inloes vs. Harvey*, 11 *Md. Rep.*, 519. In this last case, the Court of Appeals sustained the writ of possession as having been properly issued to dispossess a party who had purchased certain property from a person during the pendency of proceedings in equity against him, to set aside a conveyance by him of the property which it was alleged in the proceeding was fraudulently made. A decree was passed in that case setting aside the conveyance and securing the property to the complainant, who was put in possession under the decree. The Court says, the Superior Court in fact decided, "that the appellant being a purchaser, *pendente lite*, was concluded by a decree in the equity proceedings; and we are of opinion decided correctly." Amongst other references made by the Court is, *Story's Eq. Jur.*, *sec.* 400, from which it quotes as follows: "Ordinarily, it is true, that the decree of a Court binds only the parties and their privies in representation or estate, but he who purchases during the pendency of a suit is held bound by the decree made against the person from whom he derives title, the litigating parties are exempted from taking notice of the title so acquired, and such purchaser need not be made a party to the suit where there is a real and *bona fide* purchase; the rule may operate hardly, but it is a rule founded upon a great public policy, for otherwise, alienation made during a suit might defeat its whole purpose, and there would be no end to litigation."

In the decision above referred to, this rule, in regard to the effect of the "*lis pendens*," is stated by the Court without any

qualification, and in such terms as to signify that it applies in all cases without exception where a purchase is made during the pendency of the proceedings. The decision, however, of the same Court in *Teigley vs. Teigley*, 7 *Md. Rep.*, 563, shews, that "the doctrine of *'lis pendens'* has no application except where there is a proceeding directly relating to the thing or property in question." This language, then, furnishes the test by which can be ascertained, in any case, whether the rule of *lis pendens* applies. The Court in the above case refused to apply the doctrine of *lis pendens* so as to effect a purchase during the proceedings from the defendant, but only because it did not consider the rule applicable to such a case. It was a proceeding by a wife against her husband for alimony, and he, during the pendency of the suit, made a *bona fide* sale for value of a part of his property which the Court would not disturb; the Court said, "as well might a pending action at law to recover an ordinary debt be a *lis pendens*, as to the property of a debtor, as a proceeding like present, the purpose of each being to subject the property of the debtor to the payment of debts," but not "being a proceeding directly relating to the property in question." The authority of the above case, and of that of *Elliott vs. The United States Insurance Company*, 7 *Gill*, 319, is relied upon by the respondent to show that he ought not to be dispossessed of the premises in question. He is a purchaser *pendente lite* under circumstances precisely the same as those in the case of *Inloes vs. Harvey*, where the Court sustained the writ, except that the proceedings, during the pendency of which he purchased, were instituted by creditors to set aside a deed conveying the property as fraudulent under the statute of Elizabeth, and for a sale of it to satisfy their claims. In the above case in 7 *Gill*, the Court decided that a creditor who had obtained a judgment in a Court of Law during the pendency of proceedings in equity, in which a receiver had been appointed, acquired thereby a lien upon property and

effects in the hands of the receiver, but the opinion of the Court shews that the reason for so deciding was, that the proceedings did not so directly relate to the property in question, and their "ulterior intent" was not such as to impose restrictions upon creditors in "the prosecution of their claims upon the company either in a Court of Law or of Equity." "The only object of the Court below in the appointment of receiver was to provide for the safe keeping of the property and effects of the company." The facts and circumstances, and the reasons given by the Court for its decision in these cases, shew clearly that they furnish no authority for refusing a writ of possession against the respondent. There is no principle or rule to be deduced from them which would require this Court to refuse; so far from this, the rule which these cases establish is this, namely: where the proceeding directly relates to the property which has been conveyed to the purchaser, *pendente lite*, by a party to the cause, or where the "ulterior intent and object" of the proceeding is to subject the property in question to the disposal of a decree of the Court, there such purchaser is as much bound by the decree in the cause as the party thereto from whom he purchased. Now the proceedings of the creditors who filed the bill in this case had the most direct reference to the property, it was specially referred to in the bill, which contained a prayer for a decree directing it to be sold to pay their claims.

The respondent insists that the complainants are not parties who had any lien on this property, and then assumes the position that the rule of *lis pendens* does not apply except where the complainant, before instituting the proceedings, has some lien upon the property to be affected by the decree to which the proceedings may lead. I can find nothing to sustain this view in the language or import of the decisions of the Courts in this State or elsewhere, (except one referred to hereafter,) or in any of the elementary authors. The

Applegarth et al. *vs.* Russell.

proceedings in these cases is not regarded as a notice of an actual lien, but only of an equity. *Story's Eq. Ju.*, 9406, says: " a *lis pendens* is a general notice of an equity to all the world," unless controlled by the clearest and most satisfactory authorities. I should be very reluctant to adopt the position assumed. It is to be observed that this rule, according to the language of *Story*, adopted by the Court of Appeals, "is founded upon a great public policy," to prevent alienation during the progress of the suit and to prevent endless litigations. A decision that it did not apply to proceedings instituted by the creditors against a debtor to set aside transfers of property made by him to defeat and defraud them, would be equivalent to an unrestricted license to commit the most flagrant frauds upon creditors, because a debtor who would be so dishonest as to resort to sham transfers of his property to defraud his creditors, would not hesitate to sell it during the progress of such proceedings, and thus defeat their attempts to appropriate it to the satisfaction of their claims. The case to which I have referred as an exception to other decisions and elementary law, shewing that the position assumed for the respondent cannot be sustained by authority, is that of *McCutchens and others vs. Miller*, 31 *Mississippi*, 65. The Court that decided this case was composed of three judges and one delivered a dissenting opinion, so that, however it might be regarded as controlling judicial opinion in that State, it cannot be insisted that it should settle the case here. It is, in my opinion, unsustained by the uniform current of previous decisions as shewn by the dissenting judge who referred to them in his opinion, and not to be sustained upon principle, and I do not feel constrained to adopt the law which it announces. I must, therefore, pass an order in conformity with the above views.

On the 30th of November following, the Court passed an order requiring "the said John Bailey Orem and John A.

Applegarth to deliver to the petitioner, George W. Russell, the premises referred to in his said petition." From this order Applegarth appealed.

The cause was argued before BARTOL, GOLDSBOROUGH, COCHRAN and WEISEL, J.

*Wm. S. Waters*, for the appellants :

The state of the pleadings presents one of the questions in the case, that is, is Applegarth bound by the proceedings in *Hodges, et al. vs, Jackson, et al.?* Did the proceedings in that cause, at the time of the purchase by Applegarth, without actual notice thereof, operate as a *lis pendens* or constructive notice ? The bill in that case was filed by simple contract creditors to set aside certain deeds designed to hinder, delay and defraud creditors, and therefore void. The particular deeds are not made exhibits with the bill, but are described by their dates and places of record. The bill, so far as this question is concerned, alleges, that by the deed of the 28th of December, 1858, recorded in liber G. E. S., No. 172, folio 510, &c., George Russell conveyed to Elizabeth Jackson a lot on Lee street and Barre street, but it is nowhere asserted that Russell at any time conveyed to Elizabeth Jackson the lot on Aisquith street. The *subpœna* was served on George and Elizabeth Jackson before the conveyance to Applegarth. There was no lien acquired by the bill in this case, nor any obtained before it was filed.

1st. It will be contended, that the appellant in this case is not affected with notice of the proceedings in *Hodges, et al. vs. Jackson, et al.*, at the time of his purchase. Before the Act of 1835, ch. 380, it was necessary, in the case of real estate, to obtain a judgment, and of personal estate, an execution, before the creditor could proceed to vacate a convey-

ance for fraud. It was requisite to acquire a lien upon the property. *Birely & Holtz vs. Staley,* 5 *G. & J.,* 432.

2nd. By the Act of 1835, followed by the Code, this was rendered unnecessary, and a creditor's bill could be enter-tained in Chancery without lien. It is upon this, that the bill in *Hodges, et al. vs. Jackson, et al.,* is sustained. 1 *Code,* 78, *Title, Fraud.* To show what was the law of Maryland anterior to the Act of 1835, ch. 380, and the effect of the passage of that Act, See *Falkner & Miller vs. Edwards,* 3 *Md. Rep.,* 113. *Harris vs. Alcock,* 10 *G. & J.,* 226.

3rd. A *lis pendens* is notice of an equity or equitable claim upon the property, and affects the purchaser as actual notice, but it is not notice of a fraud so as to affect any one with notice of it. 1 *Story's Eq.,* sec. 406. *Mead vs. Orrery,* 3 *Atk.,* 242, 243.

4th. When the suit is not for the land itself, to perfect any equitable claim upon it, but to affect it on account of some collateral fact, the suit was not notice. The notice must be of some title, legal or equitable. The effect of the *lis pendens* is in analogy to the effect of the writ of right. 1 *Story's Eq.,* 395. *Metcalf vs. Pulvertoff,* 2 *Ves. & Bea.,* 207. *Fagely vs. Fagely,* 7 *Md. Rep.,* 563.

5th. Until a decree is obtained upon a creditor's bill the property is not bound by the proceedings. A creditor could proceed to acquire a lien upon it by judgment notwithstand-ing the proceedings. And if so, there could be a valid pur-chase. *McAllen vs. Miller,* 31 *Miss.,* (2 *George,*) 65. *Al-bert & Wife vs. Wilson & Wife,* 7 *Gill,* 463. 1 *Story's Eq.,* 549. *Ellicott vs. U. S. Ins. Co.,* 7 *Gill,* 319.

6th. The purchaser in this case has better equity than the creditor. 1 *Story's Eq.,* 410, (*note* 1.) *Id.,* 411, 434, 416.

7th. The bill, at the time of the purchase, did not disclose with sufficient certainty the land sought to be charged by it. The report of sale does not describe the property, and is indefinite; in fact, the sale of no definite property is ratified.

Elizabeth Jackson held the property by another deed besides that of Russell, which is not set aside by the deed of trust.

*P. McLaughlin,* for the appellee :

There is nothing in the reasons assigned by the appellant, in his answer, why the Court should not put the appellee in possession of the ground.

As to the first reason, that the description was not identical with the lot claimed : There is no such thing as this shown, and if such was the case the Court was capable of making the correction. Besides, nothing can be conveyed by the trustee except the title of the parties to the suit.

The second reason assigned in that answer would appear to justify the trustee in asking for an attachment against the appellants for contempt. *Angel vs. Smith,* 9 *Vesey,* 335

The third reason assigned by the appellant is a full admission that he claims as a purchaser *pendente lite.*

The fourth reason is closed by the decree in the case of *Hodges, et al. vs. Jackson, et al.,* and cannot be considered, but if it could, it would be of no avail to the appellant, for a party having taken a fraudulent title to the property cannot relieve it from the taint of fraud by any contrivance which he might invent for the purpose. *Estep vs. Watkins,* 1 *Bland,* 486, 489. *Strike vs. M'Donald,* 2 *H. & G.,* 191, 258, 262. *Hollingsworth vs. M'Donald,* 2 *H. & J.,* 238.

The fifth reason would seem like an effort to evade the law, but equity will not suffer that to be done indirectly that it will not allow it to be done directly. *Strike vs. M'Donald,* 2 *H. & G.,* 191, 258.

In the examination of the question of *lis pendens,* it is seldom necessary to examine into the *bona fides* of the purchaser, or whether he purchased with actual notice. It may be that he has paid the full value, and and has had no actual notice, yet he might have had actual notice had he been dili-

gent. The proceedings in the Court is notice to all. Therefore, there is nothing in the 6th, 7th or 8th reasons assigned that will aid him. 1 *Story's Eq.*, § 405.

The doctrine of *lis pendens* was not engrafted in the law so much for the purpose of punishing the purchaser, as to prevent the defendants from trifling with the Court, and for the purpose of giving to decrees practical effect, and as the only mode by which fraud, in cases like this, can be suppressed and prevented from being successfully carried into effect. 1 *Story Eq. Jur.*, § 406.

*Lis pendens* begins from the moment the bill is filed, and the defendants served with the *subpœna*, so far as the property described or clearly referred to in the bill is, by the bill, made the subject of litigation. 1 *Johns. Ch. Rep.*, 566, 575. *Jackson vs. Dickerson*, 15 *Johns.*, 309. And for this purpose no previous lien is necessary. The presumption is that every man takes notice of what passes in the Courts of Justice where he resides. 1 *Story Eq. Jur.*, § 405.

The title of a purchaser *pendente lite* is not recognized. The Court treats the property and the parties to the suit as if there was no such title in existence. 1 *Story Eq. Jur.*, § 406. *Tongue vs. Morton*, 6 *H. & J.*, 21, 23. *Inloes vs. Harvey*, 11 *Md. Rep.*, 519, 524.

The Court will deal with a purchaser *pendente lite* as they would with the party from whom he purchases, and the decree in the case will be as effectual and as binding upon the one as upon the other. 1 *Story Eq. Jur.*, § 406. *Tongue vs. Morton*, 6 *H. & J.*, 21, 23.

It is presumed that it will not be denied that the Court has ample power to put a purchaser, under a decree, into possession as against a purchaser *pendente lite*. *Dorsey vs. Campbell*, and *M'Comb vs. Hankey*, 1 *Bland*, 363. *Garretson vs. Cole*, 1 *H. & J.*, 370, 387. *Faghley vs. Faghley*, 7 *Md. Rep.*, 537, 563.

GOLDSBOROUGH, J., delivered the opinion of this Court.

Being of opinion that the views expressed by the late learned Judge of the Circuit Court, in his decision of this case, are correct for the reasons assigned by him, supported by the authorities cited in his opinion, and being satisfied, from an inspection of the record, that there is no force in the objection urged by the appellants in this Court, but not in the Court below, that the bill, at the time of the purchase, did not disclose with sufficient certainty the land sought to be charged by it, and that the report of sales does not describe the property, and is indefinite, we will sign a decree affirming the order of the 30th of November, 1863, from which this appeal was taken, with the costs of appeal to the appellee.

*Decree affirmed.*

(Decided June 29th, 1866.)