873 A.2d 1187

EMPIRE PROPERTIES, LLC

v.

Donald G. HARDY, et al.

No. 98, Sept. Term, 2004.

Court of Appeals of Maryland.

May 10, 2005.

Byron L. Huffman (Law Offices of Byron L. Huffman, P.C., Columbia, on brief), for petitioner.

Argued before BELL, C.J., RAKER, WILNER, CATHELL, HARRELL, BATTAGLIA and GREENE, JJ.

CATHELL, J.

This case concerns the proper timing and method for a purchaser of property at a foreclosure sale to seek to acquire actual possession of the purchased property from a mortgagor through judicial process. Empire Properties LLC ("Empire"), petitioner, purchased certain property at a foreclosure sale, a sale which subsequently was ratified by the Circuit Court for Prince George's County, and Empire thereafter sought to acquire actual possession of said property through judicial means. Empire presented one question for our review, which we separate into two questions, as follows:

1. Whether, in a forcible entry and detainer action (an "FED" action) brought in a District Court of Maryland pursuant to Md.Code (1974, 2003 Repl.Vol., 2004 Supp.), § 8–402.4 of the Real Property Article, the District Court has the authority to grant possession of foreclosed real property to the purchaser of that property at foreclosure sale.

2. Whether, after entry of the Order of the Circuit Court ratifying the foreclosure sale, but prior to payment of the balance of the purchase price and execution of a Trustee's Deed to the foreclosure purchaser, the foreclosure purchaser is entitled to possession of the property.

Under the circumstances of this particular case, we hold that the judicial method by which Empire sought to be awarded actual possession of the property from the holdover mortgagors was incorrect. Whereas Empire pursued a forcible entry and detainer action under § 8–402.4 of the Real Property Article in the District Court, the sole judicial method available allowing Empire to be awarded actual possession following a foreclosure sale prior to the audit and conveyance of the property is found in Maryland Rule 14–102(a) and is a judicial action within the exclusive province of the circuit courts of this State.

We further hold that, generally, where a purchase of property at a foreclosure sale is ratified by a Circuit Court, complete equitable title vests in the purchaser and the purchaser *may* then be entitled to possession of that property.

## I. Procedural History and Background

On April 11, 2003, Empire purchased at a foreclosure sale property located at 4504 Powder Mill Road in Beltsville, Maryland. The sale was thereafter ratified by the Circuit Court for Prince George's County on June 13, 2003. At the time of the foreclosure sale, Donald and Joan Hardy, respondents, were the owners and mortgagors of the property at issue. They remained in possession of the premises subsequent to the ratification of the sale.

On June 23, 2003, ten days after the ratification of the sale by the Circuit Court, Empire filed a forcible entry and detainer action under then Md.Code (1974, 2003 Repl. Vol), § 8–402.3 of the Real Property Article [1] in the District Court of Maryland sitting in Prince George's County, seeking possession of the property. The case was heard before the District Court on July 29, 2003. At that time, Empire apparently had not paid the balance of the purchase price to the foreclosure trustees and had not received a deed for the property. On or about August 1, 2003, the District Court issued a written opinion denying Empire its request for possession, stating that the District Court did not have jurisdiction to grant Empire possession under § 8–402.3 unless Empire had a deed, or legal title, to the property in question.

Empire thereafter appealed the decision of the District Court to the Circuit Court for Prince George's County. By Opinion and Order dated June 3, 2004 and entered on August 19, 2004, the Circuit Court affirmed the judgment of the District Court.

---

1. Section 1, ch. 80, Acts 2003, effective October 1, 2003, redesignated former § 8–402.3 of the Real Property Article to be § 8–402.4 of the Real Property Article.

On September 20, 2004, petitioners filed a Petition for Writ of Certiorari to this Court. On December 8, 2004, we granted the petition. *Empire v. Hardy*, 384 Md. 157, 862 A.2d 993 (2004). The Hardys did not appear or participate in the proceedings before this Court.

## II. Discussion

### A. *Judicial Method of Acquiring Possession of Foreclosed Property.*

The initial question before this Court is whether Empire pursued the correct procedure in its attempt to acquire actual possession of the property it purchased at foreclosure sale, the said sale having been subsequently ratified by the Circuit Court. In essence, Empire contends that there exists at least two available judicial means to acquire actual possession of property purchased in a foreclosure sale—pursuing a "wrongful detainer" action in the District Court under § 8–402.4 of the Real Property Article or filing a motion for possession in the Circuit Court under Maryland Rule 14–102(a). As we shall explain, the judicial route that Empire chose to assert a right to possession when the Hardys remained on the property subsequent to the ratification of the foreclosure sale in the Circuit Court, where the purchase price for the property has not been paid, the audit not approved and no conveyancing documents executed, delivered or recorded, *i.e.*, a forcible entry and detainer action brought under § 8–402.4 of the Real Property Article, was incorrect and not available to gain actual possession of property purchased at a foreclosure sale.

The method by which a purchaser at a foreclosure sale can seek to acquire actual possession of the property in the Circuit Court under the circumstances is made manifest in Maryland Rule 14–102(a), which states, in pertinent part:

"**Rule 14–102. Judgment awarding possession.**

(a) **Generally.** Whenever the purchaser of an interest in real property at a sale conducted pursuant to these Rules is entitled to possession, and the person in actual possession

fails or refuses to deliver possession, the purchaser may file a motion requesting the court to enter a judgment awarding possession of the property."

For whatever reason,[2] Empire chose not to bring a motion under Maryland Rule 14–102(a) to the Circuit Court requesting that court to award it possession of the property it purchased at the foreclosure sale, instead attempting to acquire actual possession in the District Court *via* § 8–402.4 of the Real Property Article, which states, in pertinent part:

" § 8–402.4. **Wrongful detainer.**

(a) *'Wrongful detainer' defined.*—In this subtitle, 'wrongful detainer' means to hold possession of a property without the right of possession.

(b) *Possession pursuant to entitlement under law.*—A person may not hold possession of property unless the person is entitled to possession of the property under the law.

(c) *Complaint; summons.*—(1) If a person other than a tenant holding over violates subsection (b) of this section, a person claiming possession may make complaint in writing to the District Court of the county in which the property is located.

(2) On receipt of a complaint under paragraph (1) of this subsection, the court shall summons immediately the person in possession to appear before the court on the day specified in the summons to show cause, if any, why restitution of the possession of the property to the person filing the complaint should not be made.

. . .

(e) *Judgment of court; effect of personal service.*—(1) If the court determines that the complainant is legally entitled to possession, the court shall:

---

2. At oral argument, when questioned as to why Empire did not attempt to acquire possession under Maryland Rule 14–102(a), counsel for Empire candidly and accurately stated that "time is money in foreclosures" and the "Circuit Court process is much slower" than that available in the District Court.

(i) Give judgment for restitution of the possession of the property to the complainant; and

(ii) Issue its warrant to the sheriff or constable commanding the sheriff or constable to deliver possession to the complainant."

Empire argues that " § 8–402.4 [of the Real Property Article] gives the District Courts of Maryland the authority to grant possession of real property to the purchaser of property at the foreclosure sale upon ratification of the foreclosure sale, but prior to payment of the balance of the purchase price and execution of the Trustee's Deed." Determining whether Empire is correct requires this Court to examine the statute at issue.

■■■■ We commence our analysis of § 8–402.4 by attempting to ascertain the intent of the legislature. As we said in *State v. Bell*, 351 Md. 709, 720 A.2d 311(1998):

"We have said that '[t]he cardinal rule of statutory interpretation is to ascertain and effectuate the intention of the legislature.' *Oaks v. Connors*, 339 Md. 24, 35, 660 A.2d 423, 429 (1995). Legislative intent must be sought first in the actual language of the statute. *Marriott Employees Fed. Credit Union v. Motor Vehicle Admin.*, 346 Md. 437, 444–45, 697 A.2d 455, 458 (1997); *Stanford v. Maryland Police Training & Correctional Comm'n*, 346 Md. 374, 380, 697 A.2d 424, 427 (1997) (quoting *Tidewater/Havre de Grace, Inc. v. Mayor and City of Havre de Grace*, 337 Md. 338, 344, 653 A.2d 468, 472 (1995)); *Coburn v. Coburn*, 342 Md. 244, 256, 674 A.2d 951, 957 (1996); *Romm v. Flax*, 340 Md. 690, 693, 668 A.2d 1, 2 (1995); *Oaks*, 339 Md. at 35, 660 A.2d at 429; *Mauzy v. Hornbeck*, 285 Md. 84, 92, 400 A.2d 1091, 1096 (1979); *Board of Supervisors v. Weiss*, 217 Md. 133, 136, 141 A.2d 734, 736 (1958). Where the statutory language is plain and free from ambiguity, and expresses a definite and simple meaning, courts normally do not look beyond the words of the statute to determine legislative intent. *Marriott Employees*, 346 Md. at 445, 697 A.2d at 458; *Kaczorowski v. Mayor and City Council of Baltimore*,

309 Md. 505, 515, 525 A.2d 628, 633 (1987); *Hunt v. Montgomery County*, 248 Md. 403, 414, 237 A.2d 35, 41 (1968).

. . .

"This Court recently stated that 'statutory language is not read in isolation, but "in light of the full context in which [it] appear[s], and in light of external manifestations of intent or general purpose available through other evidence." ' *Stanford v. Maryland Police Training & Correctional Comm'n*, 346 Md. 374, 380, 697 A.2d 424, 427 (1997) (alterations in original) (quoting *Cunningham v. State*, 318 Md. 182, 185, 567 A.2d 126, 127 (1989)). To this end,

'[w]hen we pursue the context of statutory language, we are not limited to the words of the statute as they are printed. . . . We may and often must consider other "external manifestations" or "persuasive evidence," including a bill's title and function paragraphs, amendments that occurred as it passed through the legislature, its relationship to earlier and subsequent legislation, and other material that fairly bears on the fundamental issue of legislative purpose or goal, which becomes the context within which we read the particular language before us in a given case.'

' . . . [I]n *State v. One 1983 Chevrolet Van*, 309 Md. 327, 524 A.2d 51 (1987), . . . [a]lthough we did not describe any of the statutes involved in that case as ambiguous or uncertain, we did search for legislative purpose or meaning—what Judge Orth, writing for the Court, described as "the legislative scheme." [*Id.* at] 344–45, 524 A.2d at 59. We identified that scheme or purpose after an extensive review of the context of Ch. 549, Acts of 1984, which had effected major changes in Art. 27, § 297. That context included, among other things, a bill request form, prior legislation, a legislative committee report, a bill title, related statutes and amendments to the bill. *See also Ogrinz v. James*, 309 Md. 381, 524 A.2d 77 (1987), in which we considered legislative history (a committee re-

port) to assist in construing legislation that we did not identify as ambiguous or of uncertain meaning."

*Kaczorowski,* 309 Md. at 514–15, 525 A.2d at 632–33 (some citations omitted)."

*Id.* at 717–19, 720 A.2d at 315–16 (some alterations in original); *see also Williams v. Mayor & City Council of Baltimore,* 359 Md. 101, 115–17, 753 A.2d 41, 48–49 (2000); *Riemer v. Columbia Medical Plan,* 358 Md. 222, 235–36, 747 A.2d 677, 684–85 (2000); *Laznovsky v. Laznovsky,* 357 Md. 586, 606–07, 745 A.2d 1054, 1065 (2000).

Section 8–402.4 of the Real Property Article was enacted (as § 8–402.3) in 1999, by 1999 Md. Laws, Chap. 649. The law was passed as H.B. 605. The preamble paragraph in Chapter 649 [3] provides:

"AN ACT concerning

### Real Property—Landlord–Tenant Actions

*FOR the purpose of revising provisions of law relating to landlords and tenants;* clarifying the rent escrow procedures to be followed in certain landlord-tenant actions; providing miscellaneous requirements for lease option agreements, security deposits, landlords' receipts, and residential leases; clarifying the procedures to be followed in instances of retaliatory evictions; authorizing the court to award certain late fees and additional accruing installments of rent in certain summary ejectment actions; authorizing the court to enter judgments for unpaid rent under certain circumstances in certain tenant holding over actions; authorizing a tenant who has not been personally served with a summons to make a limited appearance in certain landlord-tenant actions without becoming subject to the personal jurisdiction of the court; providing that the acceptance of payment under certain circumstances shall not constitute a waiver of certain

---

**3.** The purpose of a statute often may be determined by the preamble paragraph (if there is one) of the actual bill enacted by the legislative body—something not appearing in the codification of the statute.

rights absent a specific written agreement to the contrary; defining certain terms; *establishing procedures to be followed in wrongful detainer actions;* establishing procedures to be followed where the title to real property is claimed to be disputed in a landlord-tenant action; clarifying the procedures to be followed when a party in certain landlord-tenant actions elects a trial by jury; authorizing the court to exercise injunctive powers in certain landlord-tenant actions, making technical and stylistic changes; *and generally relating to the rights and obligations of landlords and tenants in actions involving landlords and tenants.*"

1999 Md. Laws, Chap. 649 (emphasis added).

⬛ Chapter 649 makes it evident from the outset that the enactment primarily[4] concerns landlord-tenant actions— the title **"Real Property—Landlord–Tenant Actions"** was a part of the Act, moreover the Act provides that it was enacted "FOR the purpose of revising provisions of law *relating to landlords and tenants . . . .*" In the case *sub judice,* there is no allegation that Empire is acting in the capacity of a landlord and that those Empire seeks to remove from the purchased foreclosure property, the Hardys, exist as Empire's tenants on the property. Thus, here there existed no landlord-tenant relationship that could possibly have been subject to a forcible entry and detainer action brought under the purview of § 8–402.4 of the Real Property Article. Although the preamble paragraph of the enacted bill states, *inter alia,* that the statute at issue was enacted for the purpose of "establishing procedures to be followed in wrongful detainer actions" and the statute itself states that " 'wrongful detainer' means to hold possession of a property without the right of possession," § 8–402.4(a) of the Real Property Article, *the statute primarily has effect in the context of a landlord-tenant relationship*

---

4. While the Act does not apply under the circumstances here present, the Act may apply to some circumstances other than where a landlord/tenant relationship exists or existed; where the relationship does not depend on a leasing agreement.

*under the law.* This is made even more obvious by the very existence of the aforementioned Maryland Rule 14–102, which speaks *directly* to the proper procedure an aggrieved purchaser at a foreclosure sale can take in the *Circuit Court* when "the person in actual possession fails or refuses to deliver possession...." Maryland Rule 14–102(a). As we recently stated in *Laney v. State*, 379 Md. 522, 842 A.2d 773 (2004):

> "When a mortgagor loses the right to possess foreclosed property but fails to vacate the premises, the purchaser of that property, in lieu of actually taking possession, may seek a court order to remove the holdover mortgagor.... *Maryland Rule 14–102(a) provides the right to use judicial process to acquire actual possession of an occupied premises.* ... When the landowner receives such a judgment awarding possession, upon the landowner's request, the 'clerk [of the court] shall issue a writ directing the sheriff to place [the landowner] in possession of the property.' Maryland Rule 3–647. Although this judicial process may be used to oust a mortgagor who no longer is entitled to possession, the use of the term 'may' in Rule 14–102(a) ... reflects the fact that the ouster process is not mandatory to obtain possession of the purchased property. In other words, seeking the court's assistance in dispossessing the holdover mortgagor is only one option available to the purchaser to obtain possession from a holdover mortgagor. Failure to exercise that option does not undermine the mortgagee's ownership of the property nor the right to possession.
>
> Rather, a purchaser with the right to possess property may take possession of that property peacefully without the court's assistance.... The right of peaceable self-help, therefore, is a viable mechanism for a title owner of property to obtain actual possession of real property from a holdover mortgagor."

*Laney,* 379 Md. at 541–43, 842 A.2d at 784–85 (emphasis added) (footnotes omitted). Empire, in its brief, contends that "Rule 14–102 does not *require* the purchaser to file a motion in the Circuit Court, but merely states that he *may*," and that

"[t]his is entirely consistent with the right of a foreclosure purchaser to proceed concurrently in ejectment, and in the foreclosure case." It is pellucid that *the* method for a purchaser at a foreclosure sale to acquire actual possession from a holdover mortgagor prior to the approval of the audit, the payment of the purchase price and the delivery of the conveyancing documents, if the purchaser chooses to use the judicial process, is the method provided for in Maryland Rule 14–102 and not that of § 8–402.4 of the Real Property Article. We merely discussed in *Laney* (a criminal case addressing the Fourth Amendment implications of whether a holdover mortgagor, following a foreclosure, has a reasonable expectation of privacy in the premises), that the use of the word "may" in the Rule indicates that, *outside of the judicial process,* "peaceable" self-help remedies can be pursued in order for a foreclosure sale purchaser to acquire actual possession. It does not mean, as Empire suggests, that alternate judicial means are available in the District Courts of this State wholly independent from Maryland Rule 14–102. Although Empire may seek to gain possession of the purchased property by filing a motion in the Circuit Court under Maryland Rule 14–102(a), it cannot under these circumstances seek the same result from the District Court under § 8–402.4 of the Real Property Article.[5]

B. *When is a Purchaser at Foreclosure Sale Entitled to Possession of the Purchased Property?*

Empire contends that it is entitled to possession of the property in question where the foreclosure sale has been ratified by the Circuit Court but before payment of the purchase price and transfer of the deed. It appears that Empire, according to a memorandum it filed in the Circuit

---

**5.** In addition to the requirements of the statute there are also policy reasons for requiring such motions to be filed in the Circuit Court in the foreclosure action. One might be that the respective courts would be taking actions independent of each other without knowledge of the status of the case in the other court. Confusion would inevitably result. There may be other public policy reasons as well.

Court on December 15, 2003, "has paid the balance of the purchase money and received a Trustee's Deed for the Property." Therefore, because the purchase price has been paid and a deed of trust has been executed and delivered to Empire, this argument appears to be moot. Nevertheless, because under the strictures of foreclosure rules and statutes it is very likely that future purchasers at foreclosure sales could be faced with the same issue as to when possession may be sought, but the issue would normally be mooted before appellate review could be consummated, we shall address Empire's question in order to resolve when a foreclosure sale purchaser may seek possession of the property. *See Attorney General v. Anne Arundel County School Bus Contractors Ass'n*, 286 Md. 324, 328, 407 A.2d 749, 752 (1979) (stating "[a] court may decide a moot question where there is an imperative and manifest urgency to establish a rule of future conduct in matters of important public concern, which may frequently recur, and which, because of inherent time constraints, may not be able to be afforded complete appellate review"). We must therefore begin by examining what the law of this State provides in relation to when a purchaser at a foreclosure sale can be said to be entitled to seek possession of the purchased property. We note, first of all that there are conflicting statements in the various cases. Our review is somewhat further complicated by the fact that some of the early cases that have become landmark cases over the years involve other types of judicial sales, not mortgage foreclosures; by the fact that payment of the purchase price had in fact been paid in the seminal case, *Lannay's Lessee v. Wilson*, 30 Md. 536 (1869); by the fact that in some cases the documents of indebtedness contained provisions for possession,[6] etc., and in some of these cases possession was not the issue. Thus, in many instances such language might be considered as dicta, albeit persuasive dicta.

---

6. At one time, and presumably at the present time, mortgages and deeds of trust regularly contained provisions permitting immediate possession in the mortgagee upon default or in the purchaser upon sale.

Well over a century ago, in the case of *Lannay's Lessee v. Wilson*, 30 Md. 536 (1869) (an ejectment action at law—not equity),[7] while considering whether a mortgagor's successor in interest could bring an ejectment action against the foreclosure sale purchaser of property where it was alleged that the trustee failed to deliver the property deed to the purchaser, this Court stated:

"A sale by a trustee, appointed by a decree for the purpose, is a judicial sale, and binds and concludes all the parties to the cause who may have right or claim; and the court passing the decree, has ample power to make its jurisdiction effectual by putting the purchaser in possession of the premises sold by its authority. And though the decree does not operate as a conveyance of the legal title, the purchaser, holding possession under it, does not hold wrongfully or unlawfully; and, consequently, all right of possession of those bound by the decree, and the proceedings under it, other than the purchaser, is divested and taken away, and, of course, with it the right to maintain ejectment. To determine otherwise, would be to embarrass and render insecure the larger portion of our judicial sales. A purchaser under a decree in equity becomes the substantial owner of the property *from the moment of final ratification of the sale,* and he is entitled to and can recover the rents and profits of the estate. He is not only *entitled to the possession of the property,* but it remains at his risk, notwithstanding the legal title may not be conveyed. By such sale the dry legal title, and the right of possession often become completely severed, at least for a time,—the legal title remaining in some of the parties to the cause, *while the equitable estate and right of possession become vested in the purchaser.* And such was the case in the present instance, in relation to the 60¾ acres, the legal title to which remained

---

7. The purchase money due had been satisfied in *Lannay's Lessee,* thus the purchase price had actually been satisfied. Not only was the purchase price satisfied, but the audit had been ratified, although apparently the purchaser failed to acquire a formal deed to the property.

in Lannay at the time of the decree. But it does not by any means follow that, because the naked legal title to such part of the land remained in him, his devisees are entitled to recover it in this action. One of the requisites is wanting, that of the right of possession."

*Lannay's Lessee*, 30 Md. at 550 (emphasis added). *See also Merryman v. Bremmer*, 250 Md. 1, 8, 241 A.2d 558, 563 (1968) (stating that the judicial sale purchaser is entitled to possession of the property after the court ratifies the sale).[8] It was made quite clear in *Lannay's Lessee* that the foreclosure sale purchaser's right to seek possession of the purchased property arises at the "moment of final ratification of the sale."

In *Zeller v. Silverman*, 143 Md. 339, 122 A. 255 (1923), we once again contemplated when a foreclosure sale purchaser can be said to have a right to seek possession of the property, specifically where an assignee of the tenant of the mortgagors continued to remain on the property at issue in that case. In explaining the law relating to what was then a writ of possession, otherwise known as a "writ of *habere facias possessionem*," [9] we explained:

"By section 93 of article 75 of the Code, it is provided in substance that whenever any lands or tenements shall be sold by any officer named therein, or by any trustee under the decree of any court in this State, * * * by any mortgagee under any power in any mortgage and the debtor named in such execution or decree, * * * shall be in actual possession of the lands and tenements sold and shall fail or refuse to deliver possession of the same to the purchaser thereof, the judge of the circuit court for the county in which the lands or tenements may be situate ... shall on application

8. *Merryman* was not a mortgage foreclosure sale, but a judicial sale arising out of the estate of Captain William B.S. Powell, one of the early pioneers and founders of Ocean City, Maryland.

9. A writ of *habere facias possessionum* (meaning "That you cause to have possession") was "a writ giving a successful ejectment-action plaintiff the possession of the recovered land." BLACK'S LAW DICTIONARY 729 (8th ed.2004).

in writing, to be verified by the affidavit of the purchaser, unless good cause to the contrary be shown by the party or parties in actual possession, within not less than fifteen days nor more than thirty days from the filing of such application, issue a writ in the nature of a writ of *habere facias possessionem* reciting therein the proceedings which may have been had in said process, thereby commanding the sheriff of the county to deliver the possession of the lands or tenements to the purchaser thereof, etc.

"In *Schaefer v. Amicable P.L. and L. Co.*, 53 Md. 83 [(1880)], it was said, the evil intended to be remedied by similar acts of assembly was, that debtors and those claiming under them after a sale, 'held on to their possession until ousted by the tedious process of ordinary judicial proceedings, thus against every principle of law and equity without the ability of making ultimate indemnity for their wrong doings, depriving purchasers for years of all enjoyment of the lands *they had honestly paid for.*'

" 'The policy which induced the adoption of the summary proceedings at law, has engrafted the same remedies upon proceedings in equity. They are judicial in their nature, collateral to the decree under which the purchaser claims and intended to give it speedy effect.'

"In *Applegarth v. Russell*, 25 Md. 317 [(1866)], it was said, 'The practice is settled in this State, that when a purchaser at a sale, *under a decree has fully complied with the terms of sale*, and possession of the premises purchased is withheld by a party to the suit, or by a person claiming under a party by title subsequent to the commencement of the suit, *the purchaser may obtain an order under which possession will be delivered to him by proper process.*' "

*Zeller*, 143 Md. at 342–43, 122 A. at 256 (alterations added) (emphasis added). Thus, under the language of *Zeller*, or, to be more precise, the language quoted from *Applegarth*, it can be argued that a necessary precursor to having a valid right to possess property purchased at a foreclosure sale is the compliance of the purchasing party with the "terms of the sale."

■ In *Union Trust Co. v. Biggs,* 153 Md. 50, 137 A. 509 (1927), we further discussed the intricacies of purchaser and mortgagor rights in the foreclosure sale time line: [10]

"After the foreclosure sale the purchaser had the equitable interest in the land commensurate with that conveyed by the mortgage deed, *and he was entitled to the legal title upon the final ratification of the sale by the court and the payment of the purchase money.* The assignee, on the other hand, held the legal title in trust for the purchaser for the completion of the sale by its ratification, the satisfaction of the purchase price, and the delivery of the deed, subject to the right to enforce the payment of any of the purchase money by a resale at the risk of the buyer. So the whole beneficial ownership or estate of both the assignee and the mortgagor had passed from the land into the obligation of the purchaser to pay. *In short, after the sale, equity regarded the property in the land as in the buyer, and the property or the price as in the assignee and mortgagor.* It is true that the sale is incomplete until ratified by the court, and that the purchaser's title is an inchoate and equitable one from the day of sale until the final ratification, which, however, retroacts so that the purchaser is regarded by relation as the equitable owner from the time of the sale, and entitled to all the intermediate rents and profits of the estate."

*Union Trust,* 153 Md. at 55–56, 137 A. at 512 (emphasis added). Therefore, while the purchaser of property at a foreclosure sale may not yet have legal title until ratification of the sale by the court and the purchase price paid, as well as the delivery of the deed, an inchoate equitable title does vest for the purchaser at the time of the foreclosure sale. This inchoate equitable title becomes a complete equitable title when the foreclosure sale is ratified by the court. *See Simard v. White,* 383 Md. 257, 313, 859 A.2d 168, 201 (2004) (stating that "[o]nce the court ratifies the sale, [complete] equitable title passes to the purchaser") (alterations added). As men-

---

10. Possession was not at issue in *Union Trust.*

tioned, legal title, separate and distinct from equitable title, vests in a foreclosure sale purchaser after ratification of the sale by a court *and* payment of the purchase money. As Maryland Rule 14–207(f)(1) states:

"(f) **Conveyance to purchaser.** (1) When made. *After a sale has been finally ratified by the court and the purchase money paid,* the person making the sale shall convey the property to the purchaser or the purchaser's assignee. If conveyance is to the purchaser's assignee, the purchaser shall join in the deed." [Emphasis added.]

This Court's emphasis on adherence by the purchasing party to the terms of sale was restated and further qualified in *Mizen v. Thomas,* 156 Md. 313, 144 A. 479 (1929), albeit as dicta: [11]

"It is true that, where in such a case as this the trustee reports a sale which in due course is finally ratified, the transaction is spoken of as a sale, and for many purposes it may be treated as a sale, and no mischief is occasioned by that use of the word. But strictly speaking it is not a sale, for a sale of real estate is not complete or consummate until the property has been actually conveyed, *or at least until the purchaser has so far complied with the terms of sale as to entitle him to a conveyance.* The bid of the purchaser, its acceptance, the report of the trustee, and its final ratification by the court, are all successive steps in the formation and completion of a perfect and binding contract of sale, but do not amount in themselves to an actual sale. Nor can the property be treated as actually sold until the terms of sale have been met or waived, and the purchaser has received or is entitled to receive a conveyance thereof. For until then the title to the property is still in the mortgagor, and the only interest acquired by the purchaser is the right to receive a conveyance of the property upon complying with the terms of sale.... *For it would be*

---

**11.** The issue in *Mizen* was whether, after the purchaser at the first sale defaulted in the payment of the purchase price and a resale occurred, the original mortgagor remained liable for a deficiency.

*singular indeed if a defaulting purchaser could oust the rightful owner from the possession of it, without either paying or securing the payment of the purchase price."* Mizen, 156 Md. at 322–23, 144 A. at 483 (citations omitted) (emphasis added).

 We note a recent decision by the Court of Special Appeals, *G.E. Capital Mortgage Services, Inc. v. Edwards,* 144 Md.App. 449, 798 A.2d 1187 (2002), where a purchaser at a foreclosure sale sought possession of the property prior to ratification of the foreclosure sale in the Circuit Court. In that case, the purchaser actually moved for a possession order under Maryland Rule 14–102 *before* ratification of the foreclosure sale in the Circuit Court. In discussing whether the purchaser was indeed entitled to possession before ratification, the intermediate appellate court initially looked to the language of Rule 14–102 and stated that "[t]o invoke the rule, the purchaser must show that (1) the property was purchased at a foreclosure sale, (2) the purchaser is entitled to possession, and (3) the person in possession fails or refuses to relinquish possession." *G.E. Capital,* 144 Md.App. at 457, 798 A.2d at 1191. The Court of Special Appeals also noted that "[t]he plain language of Rule 14–102 does not require a purchaser to wait until after ratification before filing a motion." *Id.* at 458, 798 A.2d at 1192. In fact, the court held that the purchaser was entitled to possession even before ratification of the foreclosure sale because "the right to possession was expressly provided for in the deed of trust itself," and, "[i]f for no other reason than the terms of the instrument itself, it would appear that [the purchaser] had a contractual right to possession in this case." [12] *Id.* at 461–62, 798 A.2d at 1194 (alteration added). While there was never a claim in the case *sub judice*

---

12. Where instruments of indebtedness contain provisions granting to lenders the right to take possession of the premises "upon default," it can be argued that "peaceable" possession can be taken even prior to filing of suit. This is consistent with the history of the process of mortgages as described in *Simard* where it was noted that, early in the history of mortgages, possession and title could be acquired upon default without the provisions for recourse by the debtor.

that Empire was entitled to possession of the property prior to ratification in the Circuit Court, we agree with the intermediate appellate court that, where such language is provided in the deed of trust or mortgage, purchasers at foreclosure sales may be contractually entitled to possession prior to ratification of that sale by the court (mortgagees or their assigns may even be entitled to seek possession prior to the sale itself if the instruments so provide).

Looking to other sources in regard to when a purchaser at a foreclosure sale is entitled to possession of the purchased property, a treatise on foreclosures in Maryland states:

" § 25.3 RATIFICATION, RIGHT OF POSSESSION, RISK OF LOSS

Upon the court's ratification of the sale, the purchaser becomes entitled to possession of the premises upon settlement (*payment of the purchase price and compliance with the terms of sale* ) and the risk of loss shifts to the purchaser notwithstanding that the legal title may not have passed...."

ALEXANDER GORDON IV, GORDON ON MARYLAND FORECLOSURES § 25.03, at 1030 (4th ed.2004) (emphasis added) (footnotes omitted). Later, the provision above is modified when the treatise again discusses a purchaser's right to possession, specifically where the purchaser seeks a judgment awarding possession:

" § 26.3 JUDGMENT AWARDING POSSESSION

. . .

*Generally, the court may, on a case-by-case basis award possession prior to ratification and prior to payment of the purchase price.* The anxious buyer should be prepared to show good cause at any hearing for possession prior to ratification. Once the hammer comes down at the auction, there is a reasonable tendency for the purchaser to become very uneasy about the borrower's continued possession: waste, insurance issues, liability issues, removal of sinks, tubs, fixtures and built-in appliances, cabinets, storage

sheds, pools, equipment, all seem up for grabs as a borrower, sometimes furious, malicious and hot-tempered, moves out. Then, too, a borrower facing a discharge in bankruptcy may be tempted to scorch the earth as leaving, facing no apparent liability to the deficiency. *Clearly, once the sale has been ratified and the balance of the purchase price paid, the purchaser must be put in prompt possession. ...*"

*Id.* § 26.3, at 1062–64 (emphasis added) (footnote omitted).

What becomes clear after examining the prior caselaw and other sources regarding when the right to possession accrues to the purchaser at a foreclosure sale is that varying answers to Empire's question to this Court have existed from our early opinion in *Lannay's Lessee,* but we have never explicitly declared when a purchaser is entitled to seek possession. Insofar as the law in such matters is unclear, we shall now make it clear. As stated in *Union Trust, Merryman* and, most recently, *Simard,* prior to ratification in the Circuit Court, a purchaser at a foreclosure sale has an inchoate equitable title to the property. Generally at this early stage a purchaser is not yet entitled to possession of the property absent sufficient reasons otherwise (*e.g.,* waste, deed of trust provides for possession before judicial sale or court ratification, *i.e.,* upon default, etc.).[13] When the foreclosure sale is thereafter ratified by the Circuit Court (if it is ratified at all) and complete equitable title accrues to the purchaser, the purchaser may *then* be entitled to seek possession of the property and an equity court, on a case-by-case basis, and upon proper notice, has the discretion, unless the circumstances warrant otherwise, to grant possession. The legal title to the property is not conveyed, however, until the purchase price is paid and other terms of sale, if any, are met and a deed of conveyance delivered.

---

**13.** We note that the record provided to this Court lacks any copy of the mortgage contract, deed of trust, or any instrument of indebtedness relative to the instant case.

### III. Conclusion

We hold that when a purchaser at an unaudited foreclosure sale who has not paid the purchase price and does not yet have legal title to the property seeks to acquire actual possession of the purchased property through judicial means, the purchaser must file a motion under Maryland Rule 14–102(a) seeking a judgment awarding possession from the Circuit Court. Because Empire chose not to pursue a motion under the Rule, but instead attempted to acquire actual possession in the District Court by filing a forcible entry and detainer action under § 8–402.4 of the Real Property Article, it pursued an incorrect method in its attempt to acquire actual possession of the property.[14]

We also hold that, generally, a purchaser of property at a foreclosure sale may be entitled to seek possession of that property when the sale is ratified by the Circuit Court. Subsequent to ratification, the purchaser generally has complete equitable title in the property purchased at the foreclosure sale. At this point, when complete equitable title vests in the purchaser, he or she may, under proper circumstances, be entitled to possession.

**JUDGMENT OF THE CIRCUIT COURT FOR PRINCE GEORGE'S COUNTY AFFIRMED. COSTS TO BE PAID BY PETITIONER.**

---

14. We respond to the questions in this case as they were presented by the parties. These questions related only to certain limited foreclosure issues. In a motion to reconsider, parties have pointed out ancillary problems they assert arise from our opinion. Our opinion relates only to attempts by purchasers at foreclosure sales who make an effort to assert possession prior to satisfying all of the requirements necessary to be entitled to legal title. The provision of § 8–402.4 of the Real Property Article remains applicable in non-foreclosure situations or where a claimant to possession has complete legal title arising out of foreclosure.