914 A.2d 760

LEGACY FUNDING LLC

v.

Edward S. COHN, Substitute Trustees, et al.

Legacy Funding LLC

v.

Howard N. Bierman, Substitute Trustees, et al.

Legacy Funding LLC

v.

Thomas P. Dore, Substitute Trustees, et al.

Nos. 23, 25 and 26, Sept.Term, 2006.

Court of Appeals of Maryland.

Jan. 9, 2007.

512

Byron L. Huffman (Byron L. Huffman, Columbia, on brief), for appellant.

Richard B. Rosenblatt (Linda M. Dorney, Law Offices of Richard B. Rosenblatt, Rockville, on brief), for appellees.

Christopher D. Scott, Baltimore, amicus curiae.

Ibironke Sobande, Michelle E. Stawinski (Fisher Law Group, PLLC, Upper Marlsboro, on brief), Alexander Gordon, IV (Law Offices of Alexander Gordon, Easton, on brief), for appellees as amicus.

Argued before BELL, C.J., RAKER, WILNER, CATHELL, HARRELL, BATTAGLIA and GREENE, JJ.

WILNER, J.

We have before us appeals from orders entered by the Circuit Court for Prince George's County in three foreclosure actions. Because the appeals arise from generally common facts and present common issues of law, we have consolidated them. The basic issue is whether the Circuit Court erred in denying a purchaser's claim against surplus proceeds for the rental value of the mortgaged property between the date of sale and the time the mortgagor vacated the property. We shall vacate the challenged orders and remand the cases for further proceedings.[1]

---

1. These cases each involved a deed of trust rather than a common law mortgage, but, although there are some differences between the two instruments, we have generally treated them the same. *See Baker v. Dawson,* 216 Md. 478, 493, 141 A.2d 157, 165 (1958); *Le Brun v.*

## BACKGROUND

In each of the cases before us, appellant Legacy Funding LLC purchased at a foreclosure sale a parcel of residential property that was occupied by its owner as a residence and that was not rented or otherwise commercially productive. In each case, the sale was ratified by the court, but, when Legacy failed to pay the purchase price and complete settlement in accordance with the terms of sale, the trustees petitioned for leave to resell the property. In each case, Legacy then paid the full purchase price, settled on the property without the need for a resale, and thereafter filed a motion for possession. In each case, the auditor's report, after accounting for proper expenses, showed a surplus, which would ordinarily be paid to the mortgagor.

Upon the filing of Legacy's motions for possession, the court entered orders awarding possession unless the respective mortgagors showed cause by a certain date why that relief should not be granted. None of the mortgagors offered any such cause. Prior to the dates set in the show cause orders, however, Legacy filed a motion in each case seeking payment from the surplus proceeds of amounts equivalent to the fair rental value of the property, commencing from the date of the sale. The court eventually denied the motions on the ground that, although a purchaser may be entitled to any rent actually received by the mortgagor following the foreclosure sale, a purchaser was not entitled to recover from the surplus proceeds the rental *value* of property that was not actually rented. Following ratification of the auditor's reports prepared in conformance with the court's rulings, Legacy appealed and we granted *certiorari* prior to any proceedings of substance in the Court of Special Appeals.[2]

---

*Prosise,* 197 Md. 466, 79 A.2d 543 (1951), *Northrop v. Beale,* 170 Md. 439, 184 A. 900 (1936), *cert. denied,* 299 U.S. 516, 57 S.Ct. 236, 81 L.Ed. 381, *rehearing denied,* 299 U.S. 624, 57 S.Ct. 319, 81 L.Ed. 459 (1937). For convenience, we shall sometimes refer to the instruments as mortgages and the debtors as mortgagors.

**2.** It is not clear from the record whether the surplus proceeds have been paid to the mortgagors or whether Legacy filed a bond to preclude

## DISCUSSION

■ The ultimate question in these cases is whether Legacy is entitled to recover what essentially would be damages for trespass or wrongful detainer, payable from the surplus proceeds and measured by the rental value of the otherwise unproductive properties. The key to answering that question lies in determining when the purchaser at a foreclosure sale becomes entitled to possession of the mortgaged property. In light of that determination, we must then decide when the purchaser is entitled to seek and obtain damages if the mortgagor prevents or impedes the purchaser from actually obtaining the possession to which it is entitled and whether damages may, in whole or in part, be measured by the rental value o f the property.

■ We most recently addressed the threshold question of entitlement to possession in *Empire v. Hardy*, 386 Md. 628, 873 A.2d 1187 (2005). After reviewing a number of earlier cases dating back to *Applegarth v. Russell*, 25 Md. 317 (1866) and *Lannay's Lessee v. Wilson*, 30 Md. 536 (1869) and the "conflicting statements" that appear in some of the cases in that stream *(Empire v. Hardy, supra*, 386 Md. at 642, 873 A.2d at 1195), we made clear that the purchaser at a foreclosure sale is not actually *entitled* to possession until the purchase price is paid and, through delivery of a deed o f conveyance, legal title passes. We added, however, that, upon ratification of the sale, the purchaser may "seek possession of the property" and that "an equity court, on a case-by-case basis, and upon proper notice, has the discretion, unless the circumstances warrant otherwise, to grant possession." *Id.* at 650, 873 A.2d at 1200. The effective holding of *Empire*, and

their payment. The records before us do not show that any such bonds were filed. Ordinarily, if the proceeds had, in fact, been paid to the mortgagor(s) in default of any supersedeas bond, Legacy's appeals might well be moot, in which event we would likely dismiss them. Because the records are *not* clear on this point, however, and because the mortgagors have not raised the issue of mootness, we shall assume that the cases are not moot. That issue may be explored by the Circuit Court on remand.

thus the current view of this Court, is that the purchaser becomes entitled to possession only when it has either paid the full purchase price in conformance with the terms of sale and received a conveyance of legal title to the property, or, following ratification of the sale but prior to settlement, has received an order for possession from the court.

In these cases, Legacy did not seek an order of possession until after it had paid the purchase price, so the question of whether, on the facts of these cases, it would have been appropriate for the court to grant an order for possession prior to that time is not before us.[3] We also addressed in *Empire* the proper procedure to be followed by a purchaser who seeks judicial assistance in actually gaining the possession to which it is entitled. We noted the argument by Empire that there were alternative methods that could be used—a motion in the foreclosure court pursuant to Maryland Rule 14–102 and a proceeding in the District Court pursuant to Maryland Code, § 8–402.4 of the Real Property Article (RP)—and we held that any attempt by a purchaser to seek judicial assistance after ratification of the sale but before the purchase price has been paid and settlement has occurred must be in the Circuit Court pursuant to Rule 14–102. *See Empire v. Hardy, supra,* 386 Md. at 634 and 641, 873 A.2d at 1191 and 1195. That, of course, leaves open the prospect of a purchaser seeking relief under RP § 8–402.4 after settlement has occurred, although that did not occur in these cases; Legacy

---

3. We do caution, without intending to detract in any way from what we said in *Empire* regarding the ability of the foreclosure court to enter an order of possession upon ratification of the sale, that, absent compelling circumstances, circuit courts should be wary of granting possession of foreclosed property to a purchaser who has not yet paid the full purchase price. As these cases came close to illustrating, if the purchaser defaults, the property may have to be resold, and to evict the legal owner in favor of a potentially defaulting purchaser who holds only equitable title strikes us, absent compelling circumstances, such as putting the purchaser in possession when necessary to prevent waste, secure the property, or make legally and imminently required improvements or repairs, as neither equitable no r pragmatic.

sought judicial assistance in the foreclosure case in the Circuit Court.[4]

The Circuit Court granted the motions for possession, but it denied the claims against surplus proceeds on the ground that there was no entitlement to such damages. The court regarded our holding in *Brooks v. Bast*, 242 Md. 350, 219 A.2d 84 (1966), as entitling a purchaser to any rents or profits actually received by a mortgagor following the foreclosure sale, but it did not believe that, where no such rents or profits were so received, the purchaser was entitled to the rental value of the property. Legacy contends that *Brooks* indeed *does* entitle it to compensation for rental value.

The Circuit Court was correct in concluding that *Brooks*, itself, does not mandate the kind of relief sought by Legacy in these cases, although, as we shall explain, it was incorrect in

---

**4.** Legacy's decision to seek relief in the foreclosure proceeding was entirely appropriate. Although a purchaser who, following conveyance of legal title, seeks *only* an order for possession may do so in the District Court, if the purchaser intends to seek not just possession but a share of any surplus funds as compensation for wrongful detainer, the relief, for very practical reasons, should be sought in the foreclosure proceeding pursuant to Rules 14–102 and 14–208. Apart from the fact that a parallel proceeding in the District Court seeking anything more than mere possession is likely a waste of judicial resources and vexatious as to the mortgagor, it would raise a number of practical problems in terms of enforcing a District Court money judgment against surplus proceeds within the jurisdiction of the Circuit Court.

Maryland Rule 14–208(a) permits persons claiming an interest in the proceeds of sale to file an application for payment of the claim at any time after the sale and before final ratification of the auditor's account. Rule 14–305 provides for the court, upon ratification of a sale and pursuant to Rule 2–543, to refer the matter to a court auditor to state an account. Rule 2–543 permits the auditor to hold a hearing on contested matters and permits parties or claimants to file exceptions to the auditor's report. The foreclosure rules, in part by incorporating Rule 2–543, thus provide a comprehensive procedure for resolving claims to surplus proceeds in the Circuit Court. A parallel contemporaneous proceeding in the District Court can do little more than compromise the efficiency and cohesion of that procedure, in part by creating the prospect of inconsistent determinations. We note also that RP § 8–402.4(f) permits an appeal from the District Court judgment, raising the additional prospect of not only parallel proceedings in the Circuit Court but of the surplus proceeds being distributed before the validity of the District Court judgment is resolved.

extending that conclusion to the point of finding that there was no basis for Legacy's claim.

*Brooks* involved the foreclosure of a mortgage on commercial property containing a motel and restaurant. The proceeds from the sale were not sufficient to pay the mortgage balance, so there was no surplus. The case involved mostly attacks on the sale itself, which are of no relevance here. During the proceeding in the Circuit Court, the purchaser made a claim for the "rental value" of the property dating from the time of sale, a period, as of the date of the motion, of ten months. It is not clear from the Court's Opinion whether the motel rooms were being rented during that period, but the record extract and briefs in the case indicate that the motel and restaurant remained in operation following the sale and that the mortgagors collected an d retained those rents an d profits. The extract does not indicate, however, how much was actually received, either gross or after expenses. Experts called by the parties made estimates of the income that should have been received, based largely on the occupancy rates, room charges, and restaurant operations of other motels.

Based on those estimates, experts opined as to the rental value of the motel and restaurant during the 10–month period, ranging from $1,370/month to $1,800/month. There was also evidence that, immediately following the sale, the mortgagor offered to lease the property back from the purchaser for $2,000/month. Among the orders entered by the Circuit Court was one directing the mortgagors to pay to the trustees the sum of $13,700—$1,370/month for the ten-month period—and an additional $1,370 for each month thereafter that the mortgagor remained in possession. This seemed to be in the nature of a deficiency judgment and was based on the lowest estimate of rental value.

The mortgagors excepted to that order and included in their appeal a complaint about the denial of their exception. They conceded "the right of a purchaser at a mortgage sale to a fair rental between the time of purchase and the taking of possession," which the Court regarded as appropriate under *Union*

*Trust Co. v. Biggs,* 153 Md. 50, 56, 137 A. 509, 512 (1927), and disputed only the amount ordered by the chancellor. *See Brooks v. Bast, supra,* 242 Md. at 358, 219 A.2d at 88–89. With little discussion, the Court found no error in the chancellor's allowance. *Id.*

Whether that amount was intended as an estimate of the amount of rent and other income actually received by the mortgagors or the economic rental value of the property irrespective of what was actually received is not at all clear. The Court simply confirmed the concession that the purchaser had a "right" to "a fair rental" between the time of purchase and the taking of possession.

The Circuit Court was correct in noting a distinction between *Brooks* and these cases. In *Brooks,* the Court was dealing with property that was commercially productive during the period between the sale and the turnover of possession; income was received from the property by the mortgagor. The only problem was that neither side could, or chose to, show how much gross or net income was received, so estimates were made of the income that should have been received. In holding that the purchaser was entitled to that income, the Court cited *Union Trust Co. v. Biggs, supra,* which did not involve any right to rents or other income, but in which the Court stated that after a foreclosure sale, equity "regarded the property in the land as in the buyer" and that the deed, when ultimately delivered, "vests the property in the purchaser from the day of sale." 153 Md. at 56, 137 A. at 512. The connection apparently was that, if the deed vested the property in the purchaser retroactively to the date of sale, the purchaser should be entitled to the rents and profits back to that time as well.

We need not consider here whether, in light of *Empire, Biggs* still suffices to provide a valid underpinning for the conclusions reached in *Brooks,* because we are not dealing in these cases with property that was, in fact, income-producing. Legacy is not seeking to recover income actually received by the mortgagor from his commercial use of the property follow-

ing the sale, but rather damages based on its alleged inability to obtain possession for its own purposes. There is a difference, both as to the elements of the claim and the nature of the relief.

There is no indication in *Brooks* that allowance of the claim for income received by the mortgagors was dependent on findings that the purchasers had demanded possession and were wrongfully denied it; rather, the allowance was based on a concession that the purchaser was automatically entitled to rents and profits accruing from the property after the date of sale. A claim for rental value—as damages for wrongful detainer—in contrast, rests on a showing that the claimant was wrongfully precluded from gaining possession and is in the nature of an action for trespass—an unauthorized intrusion upon the possessory interest in property of another. *Patapsco Loan Co. v. Hobbs,* 129 Md. 9, 15–16, 98 A. 239, 241 (1916); *Balto. & Ohio Railroad Co. v. Boyd,* 67 Md. 32, 40, 10 A. 315, 317 (1887); *Mitchell v. Baltimore Sun,* 164 Md.App. 497, 507, 883 A.2d 1008, 1014 (2005).

■ Compensatory damages in such an action, other than nominal damages or recovery for specific harm done to the property, is measured not by any "benefit derived by the defendant from the use of the land" but rather to provide "the injured party indemnity for his loss, and nothing more." *Jacob Tome Inst. of Port Deposit v. Crothers,* 87 Md. 569, 588–89, 40 A. 261, 267 (1898). Those damages are "usually measured by a reasonable rent for the land wrongfully occupied." *Id.* at 588, 40 A. at 267. *See also Balto. & Ohio Railroad Co. v. Boyd, supra,* 67 Md. at 40, 10 A. at 318. We do not construe those cases as establishing any right to fair rental value. The right is to seek damages for the trespass, damages that may be measured by fair rental value.

■ Although there is little guidance in the caselaw regarding the elements of a non-statutory wrongful detainer action, we think it is at least implicit that, to establish the basis of such a claim, at least one for anything more than nominal damages, the claimant must show that (1) it was lawfully

entitled to possession, (2) it demanded possession following its entitlement to do so, and (3) the possession was wrongfully denied. *Cf. Rubel–Jones Agency, Inc. v. Jones,* 165 F.Supp. 652 (W.D.Mo.1958), construing a Missouri wrongful detainer statute.

The earliest time that Legacy was lawfully entitled to demand possession was when it paid the full purchase price and received deeds to the respective properties. It is not clear when Legacy actually demanded possession. Its motions for judgment awarding possession state only that the properties were sold at foreclosure to Legacy, that the defendants were the owners of the properties, that Legacy had settled and received trustees' deeds to the properties, that Legacy was entitled to possession, and that the defendants had no right to possession. The relief requested was that the defendants or any other occupants show cause why possession should not be delivered to Legacy and that the court order the defendants or occupants to deliver possession.

The motions do no t aver that the mortgagors o r any other persons were still in possession, that if so, any demand had been made upon them, or that Legacy was, in fact, being denied possession. Nor do they seek any damages for wrongfully denying possession. None of the mortgagor-defendants contested Legacy's motions for possession. It was not until Legacy filed its motions for surplus proceeds more than a month after it settled in one case and more than two months after settlement in the other two, that it first complained that the mortgagors had refused to surrender possession, but in none of those motions did it allege when that occurred.

Because the court denied the motions on the ground that the law did not recognize a right to compensation merely for the denial of possession, Legacy was not given the opportunity to show when it demanded possession and when, if at all, that demand was rejected. Legacy attached to its motions estimates of rental value, but they, too, were not considered by the court. It is evident, however, that damages of this kind *are* available in appropriate cases, and the motions should not,

therefore, have been denied on the ground applied by the court.

It is also clear that, because the recovery is for injury arising from the wrongful denial of possession, which cannot arise until there has been a wrongful denial of possession, there can be no relation back to any earlier period. Applying a relation back theory in that context would allow damages for an injury before there legally was an injury, which would not only be poor public policy but would likely raise Constitutional questions.

We thus conclude that:

■ (1) A purchaser has the right to claim and seek possession upon payment of the full purchase price in accordance with the terms of the sale, and, unless the court, in the proper exercise of its discretion, enters an order for possession before then, not until that time.

■ (2) If the purchaser chooses to claim a share of surplus proceeds as compensation for the mortgagor's wrongfully precluding the purchaser from obtaining the possession to which it is entitled, that claim should be made in the foreclosure action in conformance with Maryland Rules 14–102 and 14–208.

■ (3) Such a claim may, in appropriate cases, be measured by the fair rental value of the property accounting from the time that the mortgagor rejected a proper demand for possession.

These conclusions shall lead us to vacate the orders entered by the Circuit Court denying appellant's motions for surplus proceeds and remand that aspect of the cases for further proceedings consistent with this Opinion. In the exercise of our discretion under Maryland Rule 8–607, we shall assess costs against appellant, Legacy, which did not prevail in its claim that it was entitled to damages accounting from the date of sale.

ORDERS IN NOS. 23, 25, AND 26 DENYING MOTIONS FOR SURPLUS PROCEEDS VACATED; CASES RE-MANDED TO CIRCUIT COURT FOR PRINCE GEORGE'S COUNTY FOR FURTHER PROCEEDINGS CONSISTENT WITH THIS OPINION; COSTS TO BE PAID, IN EACH CASE, BY APPELLANT.