939 A.2d 185

**Richard Atta POKU**

v.

**Alvin E. FRIEDMAN et al.**

**No. 50, Sept. Term, 2007.**

Court of Appeals of Maryland.

Jan. 10, 2008.

**48**

Scott C. Borison (Legg Law Firm, LLC, Frederick, Peter A. Holland, Benjamin C. Carney, The Holland Law Firm, P.C., Annapolis), on brief, for petitioner.

Kenneth J. MacFadyen (Friedman & MacFadyen, P.A., Baltimore, Robert H. Hillman, Magazine & Hillman, P.C., Rockville), on brief, for respondents.

Phillip Robinson, Civil Justice, Inc., Baltimore, amici curiae.

Argued before BELL, C.J., RAKER, HARRELL, BATTAGLIA, GREENE, ALAN M. WILNER, (retired, specially assigned) DALE R. CATHELL, (retired, specially assigned), JJ.

CATHELL, J.

In October of 2000, Richard Atta Poku, petitioner, executed a Deed of Trust encumbering property in Howard County Maryland. By assignments and merger the secured party became Washington Mutual Bank, a federal savings association. Thereafter, petitioner refinanced the indebtedness five separate times with three different lending institutions, including an entity known as Washington Mutual Home Loans, Inc. (apparently a different institution than Washington Mutual Bank). The other institutions involved in petitioner's five refinancings were: Chase Manhattan Mortgage Corporation, and First Nationwide Mortgage Corporation. For each of the five refinancings, petitioner availed himself of or agreed to use the services of the same loan broker, Service 1st Mortgage, Inc., and the same settlement entity, Advance Settlement Agency, Inc.[1]

---

1. The record is not clear who obtained the services of the loan broker or the settlement entity although the petitioner testified that he used the

The first of these refinancings involved Washington Mutual Home Loans, Inc. As stated, petitioner and the various institutions used Service 1st Mortgage, Inc. as the mortgage broker and Advance Settlement Agency, Inc. as the settlement entity. When the first refinancing was completed, no payoff was made from the refinancing proceeds to Washington Mutual Bank as to its original debt. Less than six (6) months after the first refinancing using Washington Mutual Home Loans, Inc. as the lender, petitioner again refinanced the property using Chase Manhattan Mortgage Corporation as the lender. Apparently, the indebtedness owed to Washington Mutual Home Loans, Inc., was paid off during this refinancing as it executed a Certificate of Satisfaction as to its loan which was filed. The original creditor (via assignment), Washington Mutual Bank, however, again received no proceeds and its indebtedness was neither paid nor, accordingly, released. Again the settlement was handled by Advance Settlement.

The Chase Manhattan (1st) loan was then refinanced by a loan from First Nationwide Loan, which indebtedness was later refinanced by a Chase Manhattan (2nd Chase) loan. The second Chase Manhattan indebtedness was subsequently refinanced by another Chase Manhattan (3rd Chase) loan. During all of the refinancings, the services of the same loan broker and settlement agency were used. During none of these transactions was the original indebtedness to Washington Mutual Bank paid off and that failure was apparently not brought to the attention of petitioner because the same settlement entity was used for all the transactions. It was proffered that the money that should have been used to pay off Washington Mutual Bank, was "embezzled" by the settlement entity. At oral argument it was suggested that the person

---

same loan broker because he did not want to "change hands" between the various transactions. Petitioner did not assert an agency relationship between his settlement officer and the bank in his exceptions, although he asserted the same in a later memorandum filed on the morning of the hearing. At this stage of the proceedings it is not necessary to resolve what principal the settlement entity represented. That may or may not be an issue in other litigation. Neither the loan broker nor the settlement entity are parties to this suit.

responsible for the failure to pay off the Washington Mutual Bank loan is now in prison.

Eventually, Washington Mutual Bank attempted to collect on the indebtedness owed it by petitioner and notified petitioner of the "open" status of the loan. More than eight months later, only after petitioner failed to pay off the loan despite being notified that it was due, did the Bank foreclose on the Deed of Trust.

In March of 2005, the property was sold at foreclosure sale to 8 Metree Way, LLC for the purchase price of $200,000. Thereafter, petitioner, acting *pro se*, sought to enjoin the proceedings but the request for injunction was later withdrawn by an attorney that then represented him.[2]

Later, in July of 2005, petitioner, through counsel, filed exceptions to the foreclosure sale. Both Washington Mutual Bank and the purchaser at the foreclosure sale filed responses to the exceptions. A hearing was held on the exceptions and responses over a year later. The petitioner was given a full opportunity to argue his exceptions and in fact did testify at that hearing. The exceptions were overruled and the sale was ratified on August 3, 2006. Petitioner then filed an appeal to the Court of Special Appeals and, in addition, filed a request for a stay of the proceedings with both the Circuit Court and the Court of Special Appeals. The order of the trial court conditionally denied the stay, advising the petitioner and his counsel, that the request for a stay was denied "except to the extent that" a supersedeas bond was posted. No request was ever made by the petitioner for the trial court (or the Court of Special Appeals) to set the amount of the supersedeas bond nor has any appropriate bond ever been filed with any court.[3]

---

2. This attorney apparently withdrew all of petitioner's *pro se* pleadings.

3. Respondent's brief asserts that petitioner unilaterally posted a cash bond of $2,500.00 with an order. That request was denied, but the trial court in denying the stay stated it was denied "except to the extent that … a supersedeas bond in the appropriate amount" was posted. Petitioner thereafter failed to take any further action in regard to the filing of a bond.

The Court of Special Appeals also denied petitioner's request for a stay and he filed a petition for certiorari in respect to that denial of stay with this Court, which was denied.

During the period of time of these various proceedings the purchaser at the foreclosure sale, resold the premises to Kimberly Miller who apparently is the present owner.

Ultimately the Court of Special Appeals dismissed the appeal itself because of the failure of petitioner to file a supersedeas bond or to even to ask for the setting of the amount of a supersedeas bond. We then granted his resulting petition for certiorari at 400 Md. 647, 929 A.2d 889 (2007).

Petitioner presents three questions in his brief: [4]

"1.  Whether a lender may foreclose on a home when it had exclusive possession and control of the funds to pay off the mortgage? [5]

"2.  Whether a homeowner may be denied the right to appeal when he has made every effort to obtain a stay pending appeal? [6]

"3.  Whether a homeowner's appeal of the Circuit Court's ratification of foreclosure sale is moot because of the sale, when the Circuit Court's decision might be relied upon for collateral estoppel or res judicata in other proceedings?"

At oral argument it was conceded by petitioner that he understood that at this point in the proceedings, in the present posture of the case, the Court does not have the power to take any action that would result in the return to him of the subject

---

**4.**  Petitioner has different counsel for this appeal than represented him in the Circuit Court.

**5.**  The evidence on this question is, at best, inconclusive as to whether respondent ever had possession of the disputed funds. It appears that the funds were never disbursed by the settlement entity.

**6.**  It is clear that petitioner did not make "every" effort to obtain a stay. He did not seek to have any court set the amount of a supersedeas bond nor did he file such a bond.

property. The following exchange occurred between the Court and petitioner's counsel:

> "Court: ... you're not asking this Court to take any action that would give the exact home and house back to your client?
>
> [Petitioner's Counsel]: I don't think you can.
>
> [The Court]: ... you agree that this Court can't render a decision that would give him his house back?
>
> [Petitioner's counsel]: That's right."

### Mootness

■ Maryland Rule 8–422(a)(1) "**Civil proceedings**$_{[.]}$" provides in relevant part that "an appellant may stay the enforcement of any other civil proceeding from which an appeal is taken by filing with the clerk of the lower court a supersedeas bond under Rule 8–423." Maryland Rule 8–423(b)(2) "Disposition of property$_{[.]}$" provides in relevant part, that

> "When the judgment determines the disposition of property in controversy (as in ... actions to foreclose mortgages,) or when ... the proceeds of its sale, is in the custody of the lower court ... the amount of the bond shall be the sum that will secure the amount recovered for the use and detention of the property, interest, costs, and damages for delay."

The petitioner never sought to have the trial court judge determine the amount that would secure the foreclosure price of $200,000 by determining anticipated interest accrual, costs of sale, the costs of holding the property, and other anticipated damages of delay, in spite of the trial courts virtual invitation to make such a request when it said that the order of stay was denied "*except to the extent that [Petitioner] posts a supersedeas bond in the appropriate amount.*" Petitioner never sought to have the trial court set an appropriate amount nor did Petitioner make any other effort to post a proper supersedeas bond.

In *Baltrotsky v. Kugler,* 395 Md. 468, 474–76, 910 A.2d 1089, 1093–94 (2006), Judge Harrell writing for the Court stated:

"Maryland decisional law speaks clearly on the question of the mootness of appellate challenges to ratified foreclosure sales in the absence of a *supersedeas* bond to stay the judgment of a trial court. The general rule is that ' " 'the rights of a *bona fide* purchaser of mortgaged property would not be affected by a reversal of the order of ratification in the absence of a bond having been filed.' " ' As a consequence, 'an appeal becomes moot if the property is sold to a bona fide purchaser in the absence of a supersedeas bond because a reversal on appeal would have no effect.' . . ."

"Our precedent has developed two exceptions to this general rule: (1) the occasion of unfairness or collusion *between the purchaser and the trustee,* and (2) when a mortgagee purchases the disputed property at the [mortgage] foreclosure sale. . . .

"The rationale for the general rule is borne out in this case. . . . [T]his decisional rule is intended to encourage nonparty individuals to bid on foreclosure sale properties. Bidders justifiably would be reluctant to purchase foreclosure property without assurance in the form of some security that their investments will be protected from subsequent litigation by recalcitrant mortgagors seeking to retain their property. . . . [7] The law is clear that Petitioner may not

---

7. This adverse affect of the overturning of properly ratified foreclosure sales in the absence of the filing of a bond would have a far reaching effect on the marketability of titles to land generally. If ratified foreclosure sales could be overturned long after the ratification in the absence of the filing of a supersedeas bond and the granting of a stay, the title to any property where any prior conveyance in the chain of title came out of a mortgage foreclosure sale could be questioned even if the foreclosure sale occurred a year in the past, or ten years, or fifty years. In such a scenario, lenders would become reluctant to lend money secured by such properties, buyers might become reluctant to buy such properties, and title insurers reluctant to insure title to such properties. The general marketability of title to property could be severely affected. At present, title in the *bona fide* purchaser at a foreclosure sale at least is protected partially by the necessity for the filing of a supersedeas bond in order for a mortgagor to stay the proceedings subsequent to the ratification of a foreclosure sale. In such a case, title examiners examining such titles in the future, can find problems such as those

litigate the validity of the foreclosure at the expense of others; the posting of security is required on his part to protect the purchasers and lender alike." (Citations omitted.) (Footnote added.) (Some emphasis added.)

█ There is nothing in the record of this case to indicate that either of the exceptions to the general rule are present in the case *sub judice*. Petitioner does not contend otherwise. Instead, he seeks to have this Court announce, in a foreclosure ratification case, some new rule that would enhance his ability to seek some other type of relief in some other case, or that would in some way protect him from (what he posits are) the procedural deficiencies of this case (created by him) from being asserted in some other case, presumably against parties, not all of whom are parties in this case. We decline to create another exception to the general requirement for the filling of a *supersedeas* bond, or the posting of other security. *See* Maryland Rule 8–424. Accordingly, because petitioner failed to file a bond or other security, this appeal is moot. We shall dismiss the appeal.[8]

**APPEAL DISMISSED AS MOOT. COSTS IN THIS COURT AND THE COURT OF SPECIAL APPEALS TO BE PAID BY THE PETITIONER.**

---

alleged in this case by noting the filing of a supersedeas bond as they examine the past foreclosure proceedings. When a supersedeas bond and a stay are absent, the examiner assumes the correctness of the ratification.

**8.** An *amicus* brief was filed in this case. To the extent that it supported the issues presented by petitioner, the Court's opinion as to mootness governs. To the extent that the *amicus* brief presents other issues, such presentation is improper. *Amicus* briefs are allowed for the purpose of supporting or opposing the issues presented by the parties in the appellate process. *Amici* are not permitted to raise other issues. *See Levitt v. Fax.com, Inc.*, 383 Md. 141, 144 n. 3, 857 A.2d 1089, 1091 n. 3 (2004).