988 A.2d 997

**Seyed Mehran MIRJAFARI, et al.**

v.

**Edward S. COHN, et al.**

**No. 38 Sept.Term, 2009.**

Court of Appeals of Maryland.

Feb. 16, 2010.

476

Dale A. Cooter (Cooter, Mangold, Tompert & Karas, LLP, Washington, DC), on brief, for Petitioners.

Stephen N. Goldberg (Cohn, Goldberg & Deutsch, LLC, Towson, MD), on brief; Kevin T. Olszewski (Law Office of Kevin T. Olszewski, P.A., Bel Air, Md), on brief, for respondents.

ARGUED BEFORE BELL, C.J., HARRELL, BATTAGLIA, GREENE, MURPHY, ADKINS and BARBERA, JJ.

HARRELL, Judge.

Petitioners, Maziar Mirjafari and Seyed Mehran Mirjafari ("the Mirjafaris"), owners of the investment property at issue in this case, noted exceptions to a foreclosure sale of the property, instituted by Respondents/Trustees ("the Trustees"),[1] to a third-party purchaser, Respondent/Intervenor, JSG Campus Hills LLC ("JSG"). The Mirjafaris' exceptions found no favor in the Circuit Court for Harford County and they appealed. The Court of Special Appeals dismissed as moot the Mirjafaris' appeal based on their failure to file a

---

1. The Trustees are Edward Cohn, Stephen Goldberg, Richard Solomon, and Richard Rogers.

*supersedeas* bond.[2] *See* Maryland Rules 8–422[3] and 8–423[4] (2009). The Mirjafaris contend here that no *supersedeas* bond or alternative security was required in this case because, as they allege, JSG was not a *bona fide* purchaser as of the date it paid the full purchase price. For reasons we shall explain

---

2. A *supersedeas* bond is "[a]n appellant's bond to stay execution on a judgment during the pendency of the appeal." *Black's Law Dictionary* 202 (9th ed. 2009).

3. Rule 8–422, entitled "Stay of enforcement of judgment," provides in pertinent part:

> (a) Civil proceedings. (1) Generally. Stay of an order granting an injunction is governed by Rules 2–632 and 8–425. Except as otherwise provided in the Code or Rule 2–632, an appellant may stay the enforcement of any other civil judgment from which an appeal is taken by filing with the clerk of the lower court a supersedeas bond under Rule 8–423, alternative security as prescribed by Rule 1–402(e), or other security as provided in Rule 8–424. The bond or other security may be filed at any time before satisfaction of the judgment, but enforcement shall be stayed only from the time the security is filed.

Rule 8–422(a)(1).

4. Rule 8–423, entitled "Supersedeas bond," provides:

> (a) Condition of bond. Subject to section (b) of this Rule, a supersedeas bond shall be conditioned upon the satisfaction in full of (1) the judgment from which the appeal is taken, together with costs, interest, and damages for delay, if for any reason the appeal is dismissed or if the judgment is affirmed, or (2) any modified judgment and costs, interest, and damages entered or awarded on appeal.
>
> (b) Amount of bond. Unless the parties agree otherwise, the amount of the bond shall be as follows:
>
> (1) Money judgment not otherwise secured. When the judgment is for the recovery of money not otherwise secured, the amount of the bond shall be the sum that will cover the whole amount of the judgment remaining unsatisfied plus interest and costs, except that the court, after taking into consideration all relevant factors, may reduce the amount of the bond upon making specific findings justifying the amount.
>
> (2) Disposition of property. When the judgment determines the disposition of the property in controversy (as in real actions, replevin, and actions to foreclose mortgages,) or when the property, or the proceeds of its sale, is in the custody of the lower court or the sheriff, the amount of the bond shall be the sum that will secure the amount recovered for the use and detention of the property, interest, costs, and damages for delay.
>
> (3) Other cases. In any other case, the amount of the bond shall be fixed by the lower court.

Rule 8–423.

and on the facts of this case, we hold that JSG was a *bona fide* purchaser, as of the date of its successful bid at the foreclosure sale, and, thus, the Mirjafaris' failure to file a *supersedeas* bond rendered moot their subsequent appeal of the overruling of their exceptions and ratification of the report of sale.

### *Facts*

The Mirjafaris owned investment property located at 1700 Melrose Lane in Forest Hill, Maryland. The property consists of 2.728 acres, zoned R–3, and is improved by two separate buildings containing a total of six rental units. The property was purchased by the Mirjafaris' uncle, Mansour, in 2002 for $245,000, but was titled in the Mirjafaris' name.

In 2006, the Mirjafaris received the proceeds of a $75,000 loan from Home Equity Mortgage, repayment of which was secured by a note and deed of trust on the property. The note required monthly payments of $1050.75, beginning on 1 June 2006. The Mirjafaris made the initial monthly payment on time, but failed to pay the 1 July 2006 payment until 8 August 2006. A pattern of falling behind in their monthly payments ensued.[5] On 17 January 2007, the Trustees instituted, in the Circuit Court for Harford County, foreclosure proceedings. At the time of the foreclosure sale, the Mirjafaris were seven months in arrears.

Advertisement of the sale of the property ran once a week for three successive weeks at the end of January and early February. On 15 February 2007, Alex Cooper Auctioneers conducted the foreclosure auction. JSG was the high bidder at $250,000. In accordance with the advertised terms of sale, JSG delivered an $8,000 deposit to secure its bid. A report of the sale was filed with the Circuit Court on 22 February 2007.

On 15 March 2007, the Mirjafaris, through counsel, filed in the Circuit Court exceptions to the sale, contending that the

---

**5.** On 19 October 2006, the Mirjafaris tendered a check for the August and September monthly payments, but the check was returned for insufficient funds.

sale should be set aside because the advertisements for the sale of the property violated the time requirements in Maryland Rule 14–206(b)[6] and contained certain inaccuracies in their description of the property[7] that affected adversely the amount of the bids received. The Trustees opposed the exceptions, arguing that the advertising, description of the property, and sale price were adequate. On 11 June 2007, JSG, as the foreclosure purchaser, moved to intervene in the action. The Circuit Court granted the motion to intervene.

The first round of hearings on the Mirjafaris' exceptions were held on 17 and 20 September 2007. On 16 October 2007, the Mirjafaris' initial attorney filed a motion to withdraw his appearance, which the Circuit Court granted. At the resumption of the hearings on 12 December 2007, the Mirjafaris

---

**6.** Rule 14–206, entitled "Procedure prior to sale," states in pertinent part:

> (b) Notice. (1) By publication. After commencement of an action to foreclose a lien and before making a sale of the property subject to the lien, the person authorized to make the sale shall publish notice of the time, place, and terms of sale in a newspaper of general circulation in the county in which the action is pending. "Newspaper of general circulation" means a newspaper satisfying the criteria set forth in Code, Article 1, Section 28. A newspaper circulating to a substantial number of subscribers in a county and customarily containing legal notices with respect to property in the county shall be regarded as a newspaper of general circulation in the county, notwithstanding that (1) its readership is not uniform throughout the county, or (2) its content is not directed at all segments of the population. For the sale of an interest in real property, the notice shall be given at least once a week for three successive weeks, the first publication to be not less than 15 days prior to sale and the last publication to be not more than one week prior to sale. For the sale of personal property, the notice shall be given not less than five days nor more than 12 days before the sale.

Rule 14–206(b)(1).

**7.** In this regard, the Mirjafaris argued that the advertisements were deficient in that they failed to note: (1) the number and type of buildings on the property and the number of then-current dwelling units; (2) the property's zoning designation; (3) the property's public water and sewer access and public and private ingress and egress; (4) that the subdivision of the property permitted development of up to 26 townhouse/condominium units; and (5) that the property could be sold as individual lots.

requested a continuance because they had retained new counsel only ten days prior. The Court denied the motion for continuance. The hearings proceeded, with the Mirjafaris' new counsel, and concluded the next day.

On 13 December 2007, the Circuit Court entered an order overruling the Mirjafaris' exceptions and ratifying the 15 February 2007 sale of the property to JSG. At the close of the Circuit Court's oral ruling, counsel for JSG inquired of the Circuit Court whether it would "[im]pose a requirement for an appeal bond." The judge asked counsel for the Mirjafaris if he wished to address the matter, but he declined. Our search of the record did not disclose any subsequent requests by the Mirjafaris or their counsel to the Circuit Court to determine the amount of a bond, consider alternative security, or stay ratification of the sale. On 21 December 2007, the Mirjafaris moved to alter or amend the judgment and for a new trial. The motions were denied.

The Mirjafaris, with yet again new (present) counsel in tow, noted timely an appeal to the Court of Special Appeals, presenting the following issues for consideration:

(1) Did the [C]ircuit [C]ourt err in permitting the [Mirjafaris'] former counsel to withdraw from the case and in denying a motion for a continuance?

(2) Did the [C]ircuit [C]ourt err in considering [JSG's] appraisal and in concluding that the sale price was fair?

(3) Did the [C]ircuit [C]ourt err in concluding that the description of the property in the advertisement was adequate?

(4) Did the [C]ircuit [C]ourt err in finding that there was no tender or other payment sufficient to stop the sale?

While the appeal was pending in the Court of Special Appeals, on 19 June 2008, JSG settled on the sale of the property, paid the balance of the auction purchase price, and recorded its new deed. As of that date, the Mirjafaris still had not posted a *supersedeas* bond or alternative security in any amount.

On 25 June 2008, JSG moved to dismiss the appeal on the ground that the Mirjafaris had not posted a *supersedeas* bond

or alternative security. The Court of Special Appeals denied the motion to dismiss, without prejudice, permitting JSG to renew its motion for dismissal in its brief. JSG, filing a joint brief with the Trustees, accepted the invitation and included there a motion to dismiss the appeal as moot based on the Mirjafaris' failure to post a *supersedeas* bond. The Mirjafaris opposed dismissal, contending that the appeal was not moot as no bond was required because JSG was not a *bona fide* purchaser. Specifically, the Mirjafaris argued that *bona fide* purchaser status is determined at the time the purchase money is paid and the deed is conveyed, rather than at the time of the foreclosure sale, and that, through its participation as intervenor in the Circuit Court exceptions hearings conducted subsequent to the sale, JSG acquired notice of the alleged defects in the foreclosure proceedings before it settled on the sale.

The intermediate appellate court heard oral argument on the appeal on 4 December 2008. On 5 January 2009, the panel of the Court of Special Appeals issued its reported opinion in which it granted JSG's motion to dismiss the Mirjafaris' appeal as moot based on their failure to post a *supersedeas* bond or other security. *Mirjafari v. Cohn*, 183 Md.App. 701, 963 A.2d 247 (2009). The intermediate appellate court held explicitly that "the status of a foreclosure purchaser, as *bona fide* or not, is determined as of the time of the auction sale, not at the time of the exceptions hearing or ratification by the circuit court, or when legal title passes to the foreclosure purchaser." *Id.* at 709, 963 A.2d at 252. The court noted that, if the rule were otherwise, lenders would be discouraged from foreclosing on delinquent mortgages. *Id.* Likewise, bidders would be discouraged from participating in foreclosure actions and, subsequently, from protecting their bid by participating in exceptions hearings before the circuit court. *Id.*

On 19 February 2009, the Mirjafaris filed with this Court a petition for writ of certiorari, which we granted, *see Mirjafari v. Cohn*, 408 Md. 487, 970 A.2d 892 (2009), to consider potentially two issues:

(1) Whether the time of determining *bona fide* purchaser status is to be determined at the time of the successful bid at a foreclosure sale or at the time the foreclosure purchase price is paid?

(2) Whether a foreclosure purchaser who does not settle on his purchase until fourteen months after the foreclosure sale, long after an appeal has been noted and long after the date required by the Terms of Sale, and by the time of settlement has notice of the defects in the sale and the judicial proceedings, is a *bona fide* purchaser?

The Mirjafaris contend that the Court of Special Appeals erred in dismissing as moot their appeal because JSG was not a *bona fide* purchaser, thus excusing the normal requirement of posting a *supersedeas* bond. They urge further that we consider the merits of their contentions below and reverse the Circuit Court's ratification of the foreclosure sale.[8] As it had in the Court of Special Appeals, JSG filed with this Court, on 14 May 2009, a motion to dismiss the case as moot based on the Mirjafaris' failure to file a *supersedeas* bond or other security. We deferred action on the motion to dismiss pending oral argument. We now affirm the Court of Special Appeals's grant of JSG's motion to dismiss the Mirjafaris' appeal for failure to file a *supersedeas* bond or other security.

### Analysis

In *Baltrotsky v. Kugler*, 395 Md. 468, 910 A.2d 1089 (2006), we noted that "Maryland decisional law speaks clearly on the question of the mootness of appellate challenges to ratified foreclosure sales in the absence of a *supersedeas* bond to stay the judgment of a trial court." *Id.* at 474, 910 A.2d at 1093. The general rule is that "the rights of a *bona fide* purchaser of mortgaged property would not be affected by a reversal of the order of ratification in the absence of a bond

---

**8.** Due to the nature of our holding here, coupled with the limited scope of the questions presented in the Mirjafaris' petition for writ of certiorari, we do not reach the merits of the Mirjafaris' contentions regarding alleged defects in the foreclosure proceedings.

having been filed." [9] *Id.*; *Pizza v. Walter*, 345 Md. 664, 674, 694 A.2d 93, 97 (1997), mandate withdrawn, 346 Md. 315, 697 A.2d 82 (1997) (withdrawing by joint motion pursuant to settlement agreement); *Lowe v. Lowe*, 219 Md. 365, 368, 149 A.2d 382, 384 (1959); *see also Leisure Campground & Country Club Ltd. P'ship v. Leisure Estates*, 280 Md. 220, 223, 372 A.2d 595, 598 (1977). As a consequence, "an appeal becomes moot if the property is sold to a bona fide purchaser in the absence of a supersedeas bond because a reversal on appeal would have no effect." *Baltrotsky*, 395 Md. at 474, 910 A.2d at 1093; *Pizza*, 345 Md. at 674, 694 A.2d at 97; *see also Lowe*, 219 Md. at 369, 149 A.2d at 384–85. The rule operates "even though the purchaser may know that a claim is being asserted against ratification." *Leisure Campground*, 280 Md. at 223, 372 A.2d at 598; *see also City of Hagerstown v. Long Meadow Shopping Center*, 264 Md. 481, 497, 287 A.2d 242, 250 (1972).

The rule is intended to encourage non-party individuals or entities to bid on foreclosure sale properties, as bidders "justifiably would be reluctant to purchase a foreclosure property without assurance in the form of some security that their investments will be protected from subsequent litigation by recalcitrant mortgagors seeking to retain their property." *Baltrotsky*, 395 Md. at 475, 910 A.2d at 1094; *see also Leisure Campground*, 280 Md. at 223, 372 A.2d at 598. Likewise, the rule protects lenders who have succeeded in foreclosure but who, without operation of the rule, "could not enjoy [their] success until the new action was fully litigated, all the while bearing the lost interest income." *Baltrotsky*, 395 Md. at 476, 910 A.2d at 1094. Thus, "[t]he law is clear that [mortgagors] may not litigate the validity of the foreclosure at the expense of others; the posting of security is required on [the mortgagor's] part to protect the purchasers and lender alike." *Id.* Summarizing recently the dangers of permitting extended

---

9. A *bona fide* purchaser, in the case of a foreclosure sale, "is a purchaser who takes the property without notice of defects in the foreclosure sale." *Baltrotsky*, 395 Md. at 474–75, 910 A.2d at 1093; *see also Pizza*, 345 Md. at 674, 694 A.2d at 98.

litigation without requiring the filing of a *supersedeas* bond, in *Poku v. Friedman,* 403 Md. 47, 939 A.2d 185 (2008), we stated:

> If ratified foreclosure sales could be overturned long after the ratification in the absence of the filing of a supersedeas bond and the granting of a stay, the title to any property where any prior conveyance in the chain of title came out of a mortgage foreclosure sale could be questioned even if the foreclosure sale occurred a year in the past, or ten years, or fifty years. In such a scenario, lenders would become reluctant to lend money secured by such properties, buyers might become reluctant to buy such properties, and title insurers reluctant to insure title to such properties. The general marketability of title to property could be severely affected.

*Id.* at 54 n. 7, 939 A.2d at 188–89.

■ The general rule requiring the filing of a *supersedeas* bond or alternative security has but two exceptions: (1) the occasion of unfairness or collusion between the purchaser and the trustee, and (2) when a mortgagee or its affiliate purchases the disputed property at the foreclosure sale. *Baltrotsky,* 395 Md. at 475, 910 A.2d at 1093; *Pizza,* 345 Md. at 674, 694 A.2d at 98; *Leisure Campground,* 280 Md. at 223, 372 A.2d at 598; *see also Sawyer v. Novak,* 206 Md. 80, 88, 110 A.2d 517, 521 (1955).

The Mirjafaris do not contend that JSG and the Trustees engaged in collusion [10] or that JSG was an affiliate of the mortgagee, Home Equity Mortgage. Thus, they do not maintain that the filing of a *supersedeas* bond was excused under the exceptions noted in the cases. Rather, they argue that JSG is not a *bona fide* purchaser entitled to the protection afforded by a *supersedeas* bond or other security in the present case because it had notice of the alleged defects in the

---

**10.** In their Opposition to JSG's Motion to Dismiss Appeal, filed with the Court of Special Appeals, the Mirjafaris argued that the "collusion" exception applied in the present case, claiming that John Gonzalez, the principal of JSG, and Stephen Goldberg, one of the Trustees, "have had prior business dealings." The Mirjafaris make no such contention before this Court.

foreclosure sale (due to its presence and participation in the exceptions hearing) prior to settling on the property and paying the purchase price in full, the point at which, according to the Mirjafaris, *bona fide* purchaser status is determined properly. If JSG is not a *bona fide* purchaser, as the Mirjafaris allege, it is not protected by the requirement of a *supersedeas* bond, and, therefore, the Mirjafaris' appeal should not have been dismissed as moot. JSG counters, and the Court of Special Appeals held, that *bona fide* purchaser status is determined based on the relevant facts known (or which should have been known) as of the date the successful bid is made, and that JSG did not have notice of any alleged defects prior to making its successful bid.

We have stated previously that "[b]ona fide purchaser status extends only to those purchasers without notice of defects in title, or in this case, defects *in the foreclosure sale.*" *Pizza*, 345 Md. at 674, 694 A.2d at 98 (emphasis added); *see also Baltrotsky*, 395 Md. at 474–75, 910 A.2d at 1093. Likewise, in *Poku,* we noted that "[a]t present, title in the *bona fide* purchaser *at a foreclosure sale* at least is protected partially by the necessity for the filing of a supersedeas bond in order for a mortgagor to stay the proceedings subsequent to the ratification of a foreclosure sale." *Poku,* 403 Md. at 54 n. 7, 939 A.2d at 188–89 (emphasis added). In addition, in describing the exceptions to the *supersedeas* bond requirement, we have noted that the exceptions concern actions or statuses of the parties *at the foreclosure sale. Baltrotsky,* 395 Md. at 475, 910 A.2d at 1093; *Pizza,* 345 Md. at 674, 694 A.2d at 98. Thus, as noted by the Court of Special Appeals here, *see Mirjafari,* 183 Md.App. at 709, 963 A.2d at 252, our prior decisions imply that the status of a foreclosure purchaser, as *bona fide* (or not) based on knowledge of defects in the foreclosure sale, is determined as of the time of the successful foreclosure sale, not at the time of the exceptions hearing or ratification by the circuit court, or when legal title passes to the foreclosure purchaser upon payment of the full purchase price. As long as the foreclosure purchaser is unaware of defects in the foreclosure proceedings at the time of its

successful bid and provides valuable consideration at that time, it is protected as a *bona fide* purchaser. Despite the Mirjafaris' contentions to the contrary, a foreclosure purchaser's status as *bona fide* does not depend necessarily (and especially in the present case) on the timing of payment of the balance of the purchase price.[11] *See Sawyer*, 206 Md. at 89, 110 A.2d at 521 (noting that the "mere fact that the deed was not executed until after the appeal was taken would not show collusion, or reflect upon the *bona fide* character of [the foreclosure purchaser's] purchase").

---

**11.** In this regard, the Mirjafaris rely heavily on *Westpark, Inc. v. Seaton Land Co.*, 225 Md. 433, 450, 171 A.2d 736, 743 (1961), in which we stated that "one who purchases the equitable title to real estate is not protected as a bona fide purchaser where he receives notice of a prior equity before he acquires legal title ... or where he receives notice before he has paid all or substantially all of the purchase price." *Id.* at 450, 171 A.2d at 743 (internal citations omitted). The Mirjafaris fail to acknowledge, however, that *Westpark* did not involve a judicial sale, but rather the competing interests in a conventional contract sale between a contract purchaser and a party with a prior right of first refusal, of which the purchaser knew (or its agent should have known), prior to signing the contract. *Westpark* is inapposite to the present case.

In addition, the Mirjafaris grasp for support in *Grayson v. Buffington*, 233 Md. 340, 196 A.2d 893 (1964), wherein we held that the defendants, purchasers of certain real property, did not enjoy *bona fide* purchaser status because they possessed actual knowledge of a prior conveyance "before they accepted a conveyance of the property or paid the purchase price." *Id.* at 344, 196 A.2d at 896. In that case, "[a]t the time of settlement, no written contract had been entered into by [the parties to the sale], so that either side was at liberty not to consummate the sale." *Id.* at 342, 196 A.2d at 895. In the present case, however, at the time of the foreclosure sale and prior to its participation at the exceptions hearings wherein it acquired knowledge of the alleged defects in the foreclosure proceedings, JSG submitted an $ 8,000 deposit and became obligated to pay the remainder of the purchase price. Thus, *Grayson* is distinguishable.

Finally, the Mirjafaris direct our attention to *Empire Properties, LLC v. Hardy*, 386 Md. 628, 873 A.2d 1187 (2005), and *Legacy Funding LLC v. Cohn*, 396 Md. 511, 914 A.2d 760 (2007), in which we discussed the foreclosure sale purchaser's right to possession of the property prior to the time he or she pays the full purchase price, to support their argument that payment of the full purchase price also is the proper time to determine *bona fide* purchaser status. Neither case suggests such a proposition as the Mirjafaris' contend, and we decline to broaden significantly their scope from addressing entitlement of a

■ Adopting the Mirjafaris' contention that *bona fide* purchaser status, for determination of whether an appeal bond or security is required to stay the effect of the judgment ratifying the report of sale, is determined at the time of settlement would undercut the purpose of the *supersedeas* bond requirement, namely, to encourage bidding at foreclosure sales. *See Poku*, 403 Md. at 54 n. 7, 939 A.2d at 188–89; *Baltrotsky*, 395 Md. at 475–76, 910 A.2d at 1094. If a bidder could bid successfully at a foreclosure sale and submit oftentimes a relatively significant deposit, only to lose their *bona fide* purchaser status because the mortgagor files exceptions to the foreclosure sale prior to settlement, bidding would be discouraged significantly. *See Poku*, 403 Md. at 54 n. 7, 939 A.2d at 188–89; *Baltrotsky*, 395 Md. at 475–76, 910 A.2d at 1094. In addition, bidders would be hesitant understandably to participate in exceptions hearings and protect their bids if newly alleged flaws in the foreclosure process (or subsequent flaws in the judicial process) adduced in the hearings could strip away their *bona fide* purchaser status. *See Poku*, 403 Md. at 54 n. 7, 939 A.2d at 188–89; *Baltrotsky*, 395 Md. at 475–76, 910 A.2d at 1094. Thus, in order to further the policy behind the *supersedeas* bond stay requirement to promote bids at foreclosure sales and protect bidders from prolonged litigation at their risk and expense, we hold that *bona fide* purchaser status for this purpose is determined based on what is known, or reasonably knowable, by the bidder as of the date of the successful bid at the foreclosure sale.

■ Any knowledge of relevant facts on the part of JSG as of the time of its successful bid, and the giving of valuable consideration, namely, the $8000 deposit,[12] could have been

purchaser to possession of property to the proper time for determination of *bona fide* purchaser status in a foreclosure context.

12. The Mirjafaris argue that JSG cannot be a *bona fide* purchaser because its failure to pay the purchase price in full within ten days after ratification of the sale violated the advertisement's terms of sale. The advertisement stated that "[i]f the purchaser ... fails to go to settlement within ten (10) days of ratification of the sale, the Substitute Trustee *may*, in addition to any other available legal remedies, declare the

proved at the exceptions hearings. Because nothing was found by the Circuit Court to disqualify JSG,[13] it is a *bona fide* purchaser for purposes of determining applicability of the *supersedeas* bond requirement to stay the ratification of the foreclosure sale. As such, under the *Poku, Baltrotsky*, and *Pizza* line of cases, the Mirjafaris were required under Rules 8–422 and 8–423 to post a *supersedeas* bond in order to secure their right to pursue appellate review.[14] Their failure to do so rendered their appeal moot.

---

entire deposit forfeited and resell the property at the risk and cost of the defaulting purchaser." (Emphasis added). Thus, assuming the advertisement's terms of sale were binding on JSG and that violation of such would constitute grounds for reversing ratification of the sale (an issue on which we do not pass judgment today), the language of the advertisement is non-compulsory, granting the Trustees the discretion to permit consummation of a sale beyond the ten day limit. As noted earlier, no claims of collusion between the Trustees and JSG are advanced before us.

13. The Mirjafaris contend that JSG knew of the defect in the advertisement, namely, that it did not describe fully or accurately the property, before it bid on the property, relying on Gonzalez's testimony that he did not comprehend fully the nature of the property upon initial review of the advertisement and visual inspection of the property. In its oral findings of fact, however, the Circuit Court found that "there was legally sufficient notice from the notice that was published [because] [i]t gave the Deed reference, it gave the plat reference," and that the advertisement "would give any potential buyer, bidder at the auction, more than enough information to find out about the property, and as indicated, it certainly could be easily located from the ad." This finding resolves the question of whether JSG had notice of any deficiency in the advertisement as of the making of its bid, and we have been given no sufficient reason to disturb the finding.

14. In oral argument, the Mirjafaris posed the rhetorical question of what amount of bond or other security should they have been required to post, $8,000 (JSG's deposit) or $250,000 (the winning bid). The record does not present the question of the proper amount of the supersedeas bond required in this case because at no point during the proceedings did any of the parties request that the Circuit Court confront the issue of the bond amount, consider alternative security, or stay the proceedings, other than JSG's general inquiry to the court as to whether it would "[im]pose a requirement for an appeal bond." At noted *supra*, upon JSG's inquiry, the Circuit Court asked counsel for the Mirjafaris if he wished to address the question of an appellate bond at that time, but he declined. Likewise, the Court of Special Appeals did not determine the appropriate amount of the supersedeas bond here.

JUDGMENT OF THE COURT OF SPECIAL APPEALS AFFIRMED; COSTS TO BE PAID BY PETITIONERS.

MURPHY, J., files concurring opinion in which ADKINS, J., joins.

Chief Judge BELL joins the judgment only.

Concurring Opinion by MURPHY, Judge which ADKINS, J., joins.

I agree with the majority's holding "that JSG was a *bona fide* purchaser, as of the date of its successful bid at the foreclosure sale, and, thus, the Mirjafaris' failure to file a *supersedeas* bond rendered moot their subsequent appeal of the overruling of their exceptions and ratification of the report of sale." I write separately, however, to emphasize that in the case at bar, at no point in time prior to dismissal of their appeal did Petitioners *ever* request that the Circuit Court exercise its discretion to (1) enjoin the foreclosure,[1] (2) establish the amount of a supersedeas bond, (3) order other reasonable alternative security, or (4) stay enforcement of the judgment pending appeal.[2] Nor did Petitioners request that the Court of Special Appeals enter an order staying the judgment of the Circuit Court.[3] Moreover, on the record before us the Circuit Court would have been clearly erroneous in finding that JSG was *not* a *bona fide* purchaser. Under these circumstances, Petitioners' appeal was properly dismissed.

I am concerned that the majority opinion will be misinterpreted as imposing an absolute requirement that a timely appeal noted by the victim of an equity stripping scheme must

Because the question is not properly before us, we express no opinion as to the appropriate amount of the supersedeas bond required to have been posted by the Mirjafaris.

1. See Md. Rule 14-209(b), and *Wells Fargo v. Neal,* 398 Md. 705, 922 A.2d 538 (2007).

2. See Md. Rule 2-632.

3. See Md. Rule 8-425.

be dismissed whenever he or she is unable to comply with the security provisions established by the Circuit Court—regardless of how strongly the evidence indicated that the foreclosure sale purchaser was not entitled to *bona fide* purchaser status.[4]

In 2005 and in 2008, the General Assembly enacted legislation to protect mortgagors from falling victim to the deceitful practices of certain "foreclosure consultants." Effective May 26, 2005, § 7–311(e) of the Real Property Article (RP) provided:

A BONA FIDE PURCHASER FOR VALUE OR BONA FIDE LENDER FOR VALUE WHO ENTERS INTO A TRANSACTION WITH A HOMEOWNER OR A FORECLOSURE PURCHASER WHEN A FORECLOSURE CONSULTING CONTRACT IS IN EFFECT OR DURING THE PERIOD WHEN A FORECLOSURE RECONVEYANCE MAY BE RESCINDED, WITHOUT NOTICE OF THOSE FACTS, RECEIVES GOOD TITLE TO THE PROPERTY, FREE AND CLEAR OF THE RIGHT OF THE PARTIES TO THE FORECLOSURE CONSULTING CONTRACT OR THE RIGHT OF THE HOMEOWNER TO RESCIND THE FORECLOSURE RECONVEYANCE.

In 2008, that provision was eliminated when the General Assembly enacted the Protection of Homeowners in Foreclo-

---

**4.** In *Blondell, et al. v. Turover*, 195 Md. 251, 72 A.2d 697 (1950), this Court stated:

The law requires reasonable diligence in a purchaser of real property to ascertain any defect of title. . . . When a purchaser has notice of a fact which casts doubt upon the validity of his title, the rights of innocent persons must not be prejudiced as a result of his negligence. . . . In determining whether a purchaser had notice of any prior equities or unrecorded interests, so as to preclude him from being entitled to protection as a *bona fide* purchaser, the rule is that if he had knowledge of circumstances which ought to have put a person of ordinary prudence on inquiry, he will be presumed to have made such inquiry and will be charged with notice of all facts which such an investigation would in all probability have disclosed if it had been properly pursued.

*Id.* at 257, 72 A.2d at 699.

sure Act (PHIFA).[5] The case at bar does not require that we determine why the General Assembly repealed RP § 7–311(e), but I am persuaded that the Court of Special Appeals or this Court will soon be requested to make that determination. I would not dismiss the appeal of a party making that request, provided that the party has also requested the various forms of post-judgment relief that were never requested in the case at bar.

Judge ADKINS has authorized me to state that she joins in this concurring opinion.

---

5. In 2008, the provisions of RP § 7–311 were transferred to RP § 7–312.